15256

MURPHY v. EQUITABLE ASSURANCE SOCIETY OF THE UNITED STATES

(15 S. E. (2d), 646)

November 13, 1940.

*Messrs. Hamilton, Gaston & Hamilton,* of Chester, for appellant,

*Messrs. Thomas, Cain & Black,* of Columbia, and *Messrs. McDonald, Macauley & McDonald,* of Chester, for respondent,

May 8, 1941.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The plaintiff, who is appellant here, states as her cause of action that on May 12, 1937, the defendant, respondent here, issued and delivered to J. Allen Smith and Company, of Knoxville, Tenn., a group insurance policy; in consideration of the payment by J. Allen Smith and Company of certain sums the defendant insured the lives of certain employees of J. Allen Smith and Company. Among these was Austin Murphy, the son of the plaintiff, to whom was issued and delivered an individual life certificate No. 0454—681, in which the plaintiff, Lucy S. Murphy was named beneficiary. Upon the death of Austin Murphy this certificate was payable in the sum of $1,000.00, if he were in the employ of J. Allen Smith and Company. That the employees so insured contributed a part of the premium paid by J. Allen Smith and Company, which was collected by the latter from the wages of the employees and forwarded along with the part of the premium paid by the employer. That the said Austin Murphy died August 1, 1937, while the policy was in full force and effect. That said policy contract was delivered to Austin Murphy in the State of Tennessee and plaintiff avers that the laws and decisions of the high Courts of Tennessee control the interpretation of this policy. That the decisions of the Courts of Tennessee are to the effect that:

"(a) The fact that the employer reported to the insurance company the termination of employment of the employees as of a certain date, is not necessarily binding on the beneficiary, unless the insured had ceased to be an employee.

"(b) Failure of the insured to report for work because of disability does not necessarily mean termination of employment.

"(c) Termination of employment means termination of which the employee had knowledge.

"(d) Termination of employment does not necessarily follow because the insured is ill and unable to work, if such be the case."

For answer defendant admits that it issued and delivered its group policy No. 5272532 to J. Allen Smith and Company which was issued and accepted subject in all respects to the terms and conditions thereof, and it is made a part of this answer; admits it was issued on the contributory plan; admits that it issued and delivered its individual certificate No. 045-681; alleges that it was issued subject to the conditions and terms thereof, as well as to the terms and conditions of the group policy above referred to; admits that the certificate contains the excerpt quoted in Paragraph 7 of the complaint, but craves reference to the certificate and group policy for the full provisions and limitations. It has no knowledge or information of the things contained in Paragraph 8 of the complaint, therefore denies them, except so much as alleges that said Austin Murphy's employment with J. Allen Smith and Company was discontinued on July 6, 1937, and that he died on or about August 1, 1937. It further admits it was later notified of his death and that it denied liability. Denies Paragraph 9, except that Austin Murphy died on August 1, 1937. Admits the allegations of Paragraph 10. It has no knowledge or information sufficient to form a belief as to the allegations of Paragraph 11, therefore it denies them. Denies the allegations of Paragraph 12, except so much as alleges that demand for payment was made and refused. Denies each and every other allegation of the complaint not herein admitted or denied.

For further answer, defendant alleges that both the certificate and the group policy provided that the insurance on the life of any employee shall automatically cease upon his discontinuance of his required contribution toward the payment of the premium for the insurance under the certificate

or upon the termination of his employment with the employer in the specified class of employees. It is further alleged on information and belief that insured did not make contribution toward this insurance during the month of July, 1937, and further on information and belief that the employment of Austin Murphy with J. Allen Smith and Company terminated· on or about July 7, 1937, when he was discharged, and that he was not thereafter re-employed. Defendant alleges that the death of Austin Murphy did not occur while the certificate was in force. Defendant further alleges that at the time of the termination of his employment and cancellation of his certificate, the insured did not within thirty-one days thereafter make application to convert his certificate to one of the classes of insurance to which he was entitled.

The pleadings were unusually voluminous and explicit and we have tried to state them as briefly as possible and yet retain the pleadings which contain and make the real issues.

The case was heard by his Honor, Judge Stoll, at Chester at the fall, 1940, term of the Court of Common Pleas. At the close of the testimony for plaintiff, defendant moved for a nonsuit, which motion was denied. At the close of all the testimony, defendant moved for a directed verdict in its favor which motion was granted.

The plaintiff offered in evidence Equitable Life Assurance Society's policy (certificate) No. 0454-681, dated May 12, 1937, on the life of Austin Murphy in the sum of $1,000.00. And by agreement offered a photostatic copy of the master policy dated September 30, 1932, issued to J. Allen Smith and Company, Knoxville, Tenn., on behalf of its employees. He also offered in evidence certain correspondence between him and the Equitable Life Assurance Company and J. Allen Smith and Company, which appears in the Transcript of Record as Exhibits C. D, E, F, G, H, I, J. K, and L, all of which were introduced in evidence.

This appeal comes to us from the order of Judge Stoll, which grants the motion for directed verdict, and is based upon three exceptions which appellant elects to treat in argument as making the following issues for our consideration: "Was there competent testimony tending to prove the allegations of the complaint and from which there could be drawn the reasonable inference that Austin Murphy, on August 1, 1937, at the time of his death, was a sick employee of J. Allen Smith and Company, who had temporarily refrained from work since July 7, 1937, by reason of illness, and was there competent testimony from which could be drawn the reasonable inference that the policy of insurance was in force at the time of the death of Austin Murphy;   *   *   * ?"

It is not necessary to a decision of this case that we consider respondent's sustaining ground, which leaves for our consideration plaintiff's contention that there is competent evidence tending to prove the allegations of the complaint that Austin Murphy was in the employ of J. Allen Smith and Company and that the insurance was in force when he died.

At the outset of the case, plaintiff's counsel introduced in evidence and published certain letters which passed between him and J. Allen Smith and Company and the defendant, Equitable Life Assurance Society. These appear in the record. This correspondence was begun by plaintiff's counsel by his letter of May 2, 1940 (Exhibit "C"), in which he informed J. Allen Smith and Company that Austin Murphy was dead and asked information in regard to a policy of insurance on his life; on the same day he wrote to the Equitable Life Assurance Society to the same effect (Exhibit "D"). On May 4, 1940, J. Allen Smith and Company wrote counsel (Exhibit "E"): "Our records show that Austin Murphy worked for us from May 11, 1937, to July 7, 1937. On the 7th he was discharged as being an unsatisfactory worker. At the time of his discharge his insurance was automatically cancelled as when any employee leaves us we are required to cancel his insurance. We explained this to his

mother shortly after his death and do not understand just why the matter is being brought up again."

This letter was signed J. Allen Smith and Company by W. M. Johnson, secretary-treasurer.

On May 10, 1940, W. W. Alderton, assistant superintendent of the Equitable Life Assurance Society, wrote counsel *in re* Certificate No. 0454—681—Austin Murphy, deceased:

"According to our records, this certificate was terminated as of July 16, 1937. Since the certificate was not in force at the time of death there is no basis for any claim. The group policy of J. Allen Smith and Company, under which the certificate was issued, provides that individual protection thereunder is to cease automatically upon termination of employment with that company or upon failure of an insured to pay the required premium contribution.

"On August 24, 1937, we informed attorneys Douglas & Douglas of Winnsboro, South Carolina, of the fact that there was no basis for any claim in this case. These attorneys were representing Mrs. Murphy at that time."

This action was begun July 24, 1940. On the trial the plaintiff and her son, Henry Murphy, were permitted, over defendant's objections, to testify to alleged conversations with Mr. W. M. Johnson, secretary-treasurer of J. Allen Smith and Company. Lucy Murphy, plaintiff, testified as follows:

"Q. Did you ask him about your boy having worked for him? A. Yes, sir.

"Q. And what did he say? A. He said he had worked, and was laid off for sickness; they didn't turn him off.

"Q. He told you they didn't turn him off; he was laid off for sickness? A. Yes, sir."

Henry Murphy testified as follows:

"Q. Henry, you say you went to J. Allen Smith and Company and had a talk with Mr. Johnson shortly after your brother didn't report, and what did you say to Mr. Johnson?

A. I told him my brother, Austin, was sick, and he would be back when he got better."

Defendant's counsel objected on the ground that it is hearsay; that anything Mr. Johnson may have said to these witnesses at that time concerning the Equitable Life Assurance Society would be hearsay.

Henry Murphy continued:

"Q. What did Mr. Johnson say?  *  *  *  A. He said it would be all right to come back to work.  *  *  *

"Mr. Hamilton: I wish to introduce at this time the laws of Tennessee, found in Tennessee Appeals Reports, Volume 12, page 305. (Reads. Also reading from last part of opinion, page 310).  *  *  *  (Mr. Hamilton completes reading from opinion.) I offer in evidence the opinion of the Courts of Tennessee, of Provident Accident and Life Insurance Company against Broome, 66 S. W. (2d), Edition."

This closed the testimony for the plaintiff. Thereupon counsel for defendant moved for nonsuit on the ground that plaintiff had failed to offer evidence sufficient to show that his certificate of insurance was of force at the time of the death of the insured. The testimony offered by the plaintiff further shows that Austin Murphy was discharged by the J. Allen Smith and Company on July 7, 1937. That testimony is developed by the testimony the plaintiff has offered in evidence as having been received by Mr. Hamilton in response to his inquiries as to whether or not the insurance was in force at the time of Austin Murphy's death. (Argument.)

"Mr. Cain: We move to strike out that testimony, on the ground previously stated in the record, and on the ground that such testimony tends to impeach and contradict the testimony previously offered by the plaintiff (Referring to letter of May 10, 1940.) (Argument.)

"Mr. Cain: In that connection, we make this further ground: The position which the plaintiff has offered in evidence, states that the contract is the contract entered into

between the group patron of the Insurance Company, and the Certificate is merely evidence of the employee's right to participate in that contract, the group policy being the contract by which the parties are bound, provides that the insurance shall automatically cease and determine upon termination of employment. (Reads—and argument.)

"The Court: Well, I have serious doubts about that (going to the jury) but I am not going to grant the nonsuit. You can renew your motion later by motion to direct a verdict. I won't grant the nonsuit now.

"Mr. Cain: We understand that the record does show it, we would like it to be certain, that one of the grounds of our motion is, that it appears affirmatively from the testimony offered by the plaintiff, that the insurance was terminated during the lifetime of the insured.

"Mr. Hamilton: What?

"The Court: Bring the jury back.

"(Mr. Cain reads the deposition of Val Huber, which is marked Exhibits Nos. 1 and 1-a). (Also reads the deposition of Wm. M. Johnson, which is marked Exhibit No. 2).

"Mr. Cain: Your Honor, please, in order that our position may be consistent, we offer this testimony subject to your Honor's permission—subject to the objection we have heretofore made as to plaintiff's testimony in regard to his condition. (Shows the jury exhibit attached to the deposition.) (Defendant's Exhibit 1, page 44, record.)

"Mr. Cain: Your Honor, please, pursuant to agreement with counsel, we went down to the Supreme Court to see if we could find the law of Tennessee, and to bring it up here in book form; but, owing to the fact that the Supreme Court is now in session, the Clerk permitted us to take the book and have it copied, but did not permit us to take it out of town—the books we wanted; but we do offer in evidence typewritten copies of the full opinion in the case of *Stanford v. Equitable Life Assurance Society,* decided by the Supreme Court of Tennessee, and reported in 20 S. W. (2d), 1043;

and *Davis v. Metropolitan Life Insurance Company,* decided by the Supreme Court of Tennessee, and reported in 32 S. W. (2d), at page 1034. It appears, your Honor, from the reading of these decisions offered up in continuation—they have an intermediate Court of Appeals which is known as the Tennessee Appeals, and then they have the Supreme Court, and, we submit, the decisions which we offer here, to our best knowledge, are the decisions of the Court of final resort, and the Court of last resort in Tennessee."

Defendant moved for directed verdict as follows:

"Mr. Cain: If your Honor, please, the defendant moves that a verdict be directed in favor of defendant, on the ground that the only reasonable inference to be drawn from the evidence, is, that the employment of Austin Murphy with J. Allen Smith and Company terminated on July 7, 1937, and that in accordance with the provisions of the Group Policy, and of the Certificate of Insurance, automatically terminated upon the termination of such employment, and, inasmuch as the insured was alive on July 7, 1937, the date of the termination of the employment, and the insurance, no liability can be asserted against the Society under the provision of the Certificate, or Policy. It is admitted that the insured did not die until August 1, 1937, which was some weeks after the termination of his employment, and the cancellation of the insurance. (Argument.)

"Mr. Cain: We submit, as additional ground, that no liability can be enforced against the Society, for the additional reason that the insured did not make the required contribution towards the payment of the premium; that is, the premium which he last paid was not sufficient to continue the insurance up to and including the date of his death.

"We also predicate this motion on all the grounds which we made in our motion for nonsuit. And, in the interest of time, we will, with the permission of the Court, consider that those grounds are likewise grounds for the direction of a verdict."

In a short order the Court granted the motion, saying:

"The Court: Well, I always prefer to let cases go to the jury, but I can't do violence to my own conscience. As I see this case, this man went to work, the undisputed testimony, he went to work May 12, 1937, and he stopped work July 7th. That is not quite two months. And, as I see it, the only reasonable inference to be drawn from the testimony * * *

"Mr. Hamilton: Your Honor, he died within three weeks after he quit work.

"The Court: I know that. The only reasonable inference I can draw from the testimony, that he was not in the employ of this company, the J. Allen Smith and Company, he was not in the employ at the time, and therefore he didn't have any insurance. That is the way I see it. I don't like to direct verdicts and grant nonsuits, but I am not going to shirk it. Bring the jury back."

This is a long and tedious record. It has been necessary to reproduce much of it in order that it be plain to the Court, because of the ramifications of the pleadings, the testimony, parol and documentary, and the arguments on motions for nonsuit and directed verdict. It is in order now to consider the questions made by plaintiff's exceptions.

The issue is made by the objection of defendant to the testimony of plaintiff and her son, Henry Murphy, as it relates to their alleged conversation with W. M. Johnson, and the ruling of the trial Judge thereabout.

We think the trial Judge should have granted defendant's motion to strike out so much of the testimony of those two witnesses of the plaintiff as undertakes to state anything that they say that Mr. Johnson said to them relative to the termination of the employment of Austin Murphy and relative to the payment of the insured's contribution to the premium.

Indeed, he practically did grant the motion. He said, in denying the motion for nonsuit, that he had serious doubt

whether that testimony should be allowed to go to the jury, that he would not then grant the nonsuit, but that the defendant might renew the motion in a motion for directed verdict. When, therefore, he granted the motion for directed verdict, which was made in part on the grounds upon which the motion for nonsuit was based, the learned Judge in effect may be said to have struck out in his mind this testimony, and felt that it should not be considered.

Other grounds of the motion for directed verdict are that this contract of insurance was between J. Allen Smith and Company and the defendant insurance company; that Johnson was the employee of J. Allen. Smith and Company and his statements could not affect the defendant insurance company.

Counsel for appellant state in the complaint and in their argument that this contract of insurance was made in the State of Tennessee and was to be enforced in Tennessee and that this case is controlled by the laws and decisions of that State, and introduce laws and decisions of Tennessee to uphold their contention that Austin Murphy, when he died, was in the employ of J. Allen Smith and Company and his certificate of insurance was of force.

Appellant contends that W. M. Johnson was the agent of J. Allen Smith and Company. Respondent denies that proposition and asserts that if it were true, that did not make him the agent of the insurance company and his alleged statements could not affect nor bind the insurance company.

The appellant cites and relies on the case of *American National Insurance Company, plaintiff in error, v. Mrs. Lena Jackson, defendant in error,* 12 Tenn. App., 305. It would be sufficient to say that the Appeals Court of Tennessee is the Intermediate Court; the Supreme Court of that State is the Court of last resort.

In the case we are considering, the plaintiff herself has introduced conclusive evidence, invoked by her counsel's letters to J. Allen Smith and Company, that the employment of

Austin Murphy with J. Allen Smith and Company terminated July 7, 1937, and he died August 1, 1937. Appellant's counsel says that this correspondence was introduced for the purpose of showing Johnson's agency. It does not appear from the record that he made any such statement or reservation when the letters were offered in evidence. Irrespective of the purpose counsel had in mind when he introduced this correspondence in evidence, we think he is barred from denying it or introducing evidence to contradict it. When he introduced the letters written J. Allen Smith and Company and Equitable Life Assurance Society, he made the contents of the letters his own evidence and could not contradict it. This question was settled by this Court in an opinion by Mr. Justice Baker in the case of *Baker v. Metropolitan Life Insurance Co.*, 184 S. C., 341, 192 S. E., 571, 574. In that case it appears that the testimony of Lester Burke, a nonresident, was taken by deposition as a witness for the defendant. The deposition was in the custody of the Clerk of Court and was introduced in evidence by plaintiff's attorney. The Circuit Judge held that Burke thereby became the witness for the plaintiff. Appellant, the plaintiff, contended that testimony taken *de bene esse* which is in possession of the Clerk of Court may be offered in evidence by either party. The Circuit Judge said that is true, but whichever party offers the deposition in evidence makes the deposition his own witness. To this ruling the plaintiff made exception on appeal. This Court said:

"It would appear that there is good reason in the ruling of the trial judge. The taking of testimony *de bene esse* by a party to an action does not *ipso facto* make such testimony so taken a part of the record. This testimony may or may not be offered by the party at whose instance it has been procured. The statute (Code 1932, § 706) permitting the introduction of testimony thus taken merely provides a method to be pursued in the interest of economy, the convenience of the witness, and the impossibility of compelling such witness to attend the trial of the case and testify. It would not be

contended that a witness in actual attendance upon the court under a subpœna from a party to the action could be placed upon the witness stand by the adverse party, and yet be considered the witness of the party on whose subpœna such witness was present. The principle is the same.

"The true rule on the subject, which is in line with the ruling of the trial judge, is found in 8 R. C. L., pp. 1166, 1167, and in 18 Corpus Juris, p. 733, and from which we quote in their order:

" 'Under the general rule that a party is not permitted to impeach or discredit his own witness, a defendant who offers in evidence a deposition taken on the plaintiff's commission cannot complain of the exclusion of questions asked the witness on cross-examination affecting his credibility, since by offering the deposition he makes the deponent his own witness.'

" 'Without reference to the fact of who has the deposition taken, it will be considered the evidence of the party who offers it in evidence, and a party offering the deposition of the adverse party cannot urge objections to any portion thereof offered by him.' "

We have herein above held that it was error not to strike from the record the testimony of the plaintiff and Henry Murphy as to that which they allege Mr. Johnson told them to the effect that the insured employee, Austin Murphy, was in the employment of J. Allen Smith and Company when he died and that his insurance was then in force. With this testimony eliminated, the only other evidence anent the matter was that appearing in the letters introduced by appellant and in the depositions to the effect that Austin Murphy was not in the employ of J. Allen Smith and Company when he died and his insurance was not in force.

Appellant's counsel says in his brief that he introduced the correspondence to show that W. M. Johnson was the agent of J. Allen Smith and Company; if it were conceded that Johnson was the agent of J. Allen Smith and Company (which is not done), it does not appear that he had author-

ity to alter the terms of the contract of insurance which his employer had with the defendant.

Appellant has elected to be bound by the laws and decisions of the Courts of Tennessee in the construction of the issues which he presents. These decisions, interpretative of these group policies, are against appellant, as are those of a number of other jurisdictions. Our Courts hold that a contract is controlled by the laws of the State in which it is made and is to be performed.

Appellant offered in evidence the Tennessee case of *Provident Life & Accident Insurance Co. v. Broome,* 17 Tenn. App., 284, 66 S. W. (2d), 1041, but he does not set it out in his brief or in the record. However, through the courtesy of West Publishing Company, we have received a copy of South Western Reporter which contains this case, and we find from a perusal of it that not even the employer in that case considered that the employment had been ended. So that case has no application to ours.

Appellant refers to the fact that respondent offered in evidence the Tennessee case of *Stanford v. Provident Life & Accident Insurance Co.,* 159 Tenn., 556, 20 S. W. (2d), 1043, 1044. That case construes a group policy which turns principally upon the question whether the policy was continued in force by the payment of premiums previous to the occurrence of the accident. The facts are not wholly similar to those in the present case, but have some bearing on it. The Tennessee Court said:

"It will be noted that the above-quoted language provides for the termination of the insurance upon the happening of either of two events—the default of a premium installment, or the ending of the insured's employment by the Southern Railway; the insurance to continue after the happening of the latter event only 'by reason of premium previously paid.'

"The provision for termination of the insurance upon the cessation of the insured's employment was a provision for its termination before the expiration of the year for which the policy was written, within the exception of the clause

hereinabove quoted from the policy's 'special provisions.' Upon the termination of the employment, the insurance was continued in force only 'by reason of premium previously paid.' By express stipulation the premium paid by the insured previous to his discharge from the service of the Southern Railway Company, being one installment or one-sixth of the annual premium, continued 'the policy in force for a period of two months' from its date. The date of the policy as renewed was March 25, 1928, and the two-month period had already expired when the insured was injured on May 28, 1928. We are therefore forced to the conclusion reached by the learned circuit judge that the policy in suit was not in force at the date of the accident."

The case of *Davis v. Metropolitan Life Insurance Company*, reported in 161 Tenn., 655, 32 S. W. (2d), 1034, is so strikingly similar to the case we are now considering that we venture to quote from it fully. We are quoting from the opinion of the Supreme Court of Tennessee:

"As the beneficiary, holding a certificate under a group policy issued on application of the city of Knoxville to insure the members of the police and fire department, Myrtle Davis brought suit to recover a death benefit of $1,000. The circuit judge tried the case without a jury and held that the policy had been canceled before the death of the husband of Mrs. Davis and gave judgment for the defendant company.

"The Court of Appeals, holding that the cancellation agreed upon between the city and the company was not effective as against this beneficiary until the expiration of a thirty-one day grace period provided for in the policy, reversed the trial court and gave judgment for the plaintiff below.

"This court has granted a petition for *certiorari* and argument has been heard. The policy is in the usual group form and was issued upon the application of the city of Knoxville, by its city manager, as of March 22, 1927. It provided for the employer, city of Knoxville, to pay monthly, in advance, a premium based on the number of employees covered from

month to month, according to a schedule. The contract between the city and the company limited the proportion of the premiums to be collected from the various employees to 20 per cent. thereof, the city paying the other 80 per cent. * * *

"Davis died on the 21st of July, 1927, one day before the expiration of the grace period which is relied on. * * *

"The provision of the Metropolitan policy, a standard clause, on which the plaintiff relies, is as follows:

" 'The payment of any premium shall not maintain the insurance under this policy in force beyond the date when the next premium becomes payable, except as provided in the next paragraph.'

" 'A grace of thirty-one days without interest charge, will be granted to the employer for the payment of every premium after the first, during which period the insurance shall continue in force.'

"It must be borne in mind that this grace provision does not contemplate *free* insurance. The grace is allowed in order that the insured may have this extension of opportunity within which to pay another premium and thus avoid forfeiture for non-payment on the date fixed for payment. * * *

"Moreover, we are persuaded that the power of cancellation of this policy, applied for and issued to the city of Knoxville, was in the city, and that its action was binding upon the several individual employees holding certificates issued thereunder. It appears that the courts which have considered these group policy contracts have held that the contracting parties were primarily the employer and the company. The policy is applied for by the employer and issued to the employer, and the insuring company has no direct contractual relations with the several individual employees. It is the employer who pays the premiums to the company, and there is no liability therefor to the company on the part of the individual employees. The rights which the employees acquire are incidental merely. [Citing cases; the last of

which is *Thompson v. Pacific Mills,* 141 S. C., 303, 139 S. E., 619, 620, 55 A. L. R., 1237.] * * *

"In the last-cited case the Supreme Court of South Carolina quite clearly recognized the employer and the company as the 'original contracting parties' with the right in these two parties, by mutual agreement, to extend or terminate the contract, or enter into an altogether new contract, holding that their action would be binding upon the employees for whose benefit the group policy was procured.

"In the *Stoner case, supra* [*Stoner v. Equitable Life Ass'n Society,* 28 Dauph. Co. Rep., Pa., 235], it was said: 'It is argued by the plaintiff that this policy could not have been cancelled or terminated without notice to the insured. To that contention we cannot assent. The insured was not a party to this contract. The beneficiary had no such vested interest in it as in an ordinary life policy, where the beneficiary is named, and no right to change has been reserved. In this policy contract a specific right to change the beneficiary was reserved. There was no overpayment of premiums by the insured as in any ordinary life insurance policy. It carried no such surrender value. The employer had reserved the right to terminate the insurance. There is, therefore, no comparison between this contract and one which cannot be terminated without notice to the insured. This insurance was presented by the company to Stoner and its other employees, as it indicated in the letter transmitting the certificate, to emphasize "the spirit of mutual helpfulness and good will." The company might have changed its policy and declined to further carry the insurance. * * * When the company notified the defendant Society to cancel or terminate the insurance and the defendant Society entered such termination upon its records on April 12, 1924, it effectively wiped out this contract, and the rights of Franklin A. Stoner under it.'

"We do not consider our statute making the solicitor of insurance the agent of the insurer applicable here. No question of agency arises. The city and the company are the original contracting parties. It is the employer, here the city,

which promised to pay the premiums, collecting in turn a *pro rata* from its several employees. No individual employee could have asserted a right to continue the policy independent of the employer. It follows that he could not have resisted a cancellation of the group policy by agreement between the employer and the company.

"Moreover, referring back to the grace clause relied on, it will be observed that it provides that, 'a grace of thirty-one days without interest charge, will be granted *to the employer* for the payment,' etc. The words italicized are significant, and in harmony with the view we have taken, that the contract is primarily one between the employer and the company."

We think this lucid opinion of the Supreme Court of Tennessee completely refutes the contentions of appellant as stated in his brief. The opinion is in accord with the decisions of the Courts of a number of other states.

The case of *Kowalski v. Aetna Life Ins. Co.,* 266 Mass., 255, 165 N. E., 476, 477, 63 A. L. R., 1030, has this:

"On May 29, 1919, a policy of group life insurance was issued by the defendant in the first case to the employer, the defendant in the second case. By the terms of the policy the insurer agreed 'to pay the amount of insurance shown against the name of any person in the application for this policy, on due proof of the death of such person (herein called the insured) within the term of one year from 5 o'clock p. m. of the date thereof, ending at 5 o'clock p. m. on the Twenty-Ninth day of May, 1920, provided that the insurance on such life has not been previously terminated.' The plaintiff was the husband of Sophie Kowalski who died February 7, 1922, and who, at different times had worked for the defendant Lovell and Covel Company. He contended that the employee was in the continuous service of the employer from August 25, 1919, to the date of her death. * * *

"The policy issued to the employer contained the following provisions: 'It is also understood and agreed that when

any person insured by this policy ceases to be employed by said employer the insurance on such life shall immediately cease when notice thereof, together with a request for discontinuance of the insurance, is given to the Company by said employer, and the unearned premium paid on account of such insurance will be returned by the Company.'

\* \* \*

"The plaintiff testified that the deceased worked for the employer until April 9, 1921, and that on April 13, 1921, she was delivered of a child; that two weeks later he went to her employer and collected the wages due her up to April 9; that she did not return to work until sometime in September following, after which she worked until the day before Christmas; that she was then 'laid off' for two weeks; that in January, 1922, she became sick and was taken to a hospital and remained there until her death on February 7, 1922.

\* \* \*

"The plaintiff testified that his wife stopped working on April 9, 1921, and gave birth to a child on April 13, 1921; that two weeks thereafter when he collected the wages due her, the employer's bookkeeper asked him 'What is the matter with Sophie? She come back work?' and the plaintiff replied 'She have child. She can't come in.' On May 4, 1921, the insurance was cancelled, and the card of the employee was removed from the index of employees covered by insurance. When the policy was renewed on May 29, 1921, the employee was not included among those for whom premiums had been paid, and therefore she was not covered by this renewal policy.

"At the time of her death she was not included in any policy then in force. It is manifest, in view of the testimony of the plaintiff and the entire evidence, that the employment of the deceased had terminated. The record shows that she was employed from week to week, and that it was optional with the employer when and how long she would be given work, as the employment depended upon the condition of

the employer's business. When she applied for work in August, 1921, it clearly appears that she had not been laid off temporarily, and had not been on leave of absence. In any event the employer was justified in terminating her employment and in giving notice to the insurance company to that effect. Inability to perform the services required of her entitled the company to terminate the contract. 'Death or a disability which renders performance impossible discharges the contract.' *Marvel v. Phillips,* 162 Mass., 399, 401, 38 N. E., 1117, 1118 (26 L. R. A., 416, 44 Am. St. Rep., 370), and cases collected. In *Johnson v. Walker,* 155 Mass., 253, 29 N. E., 522, 21 Am. St. Rep., 550, there was a contract for personal services for one year. The employee during the term was ill for seven weeks and incapacitated for his work. It was said at page 255 [of 155 Mass.] (29 N. E., 522) : 'We think that, as a matter of law, this constituted such an interruption of and failure to perform his contract on the part of the plaintiff, that the defendants were justified in terminating it, and employing another person in his place.' In the case at bar the employee was not entitled to notice that her employment had been terminated. *Johnson v. Walker, supra.*

"The circumstances that the deceased was again employed in September, 1921, and continued to work until the day before Christmas, even if she was then laid off for two weeks, and died on February 7, 1922, does not entitle the plaintiff to recover, as her employment had been rightfully terminated on May 4, 1921, and was not covered by the policy issued to the employer May 29, 1921."

The case of *Duval v. Metropolitan Life Ins. Co.,* reported in 82 N. H., 543, 136 A., 400, 50 A. L. R., 1276, states the following, quoting Syllabi 8, 17, 18, and the annotation to the case :

"8. A contract to insuré is not affected by the statute of a state in which it is neither made nor to be performed."

"17. When the reasonable interpretation of a contract of insurance is ascertained, both parties are bound by it.

"18. A clause in a certificate under a policy of group insurance, the coverage of which ceases upon termination of the employment of the certificate holder, under the heading, 'Privilege of Continuance,' which states that in the event of termination of the employment the employee shall be entitled, without further evidence of insurability, and upon application within thirty-one days after the termination, and upon payment of the required premium, to a policy in an amount equal to that named in the certificate, does not continue the coverage after termination of the employment without action by the certificate holder."

\*　　　\*　　　\*

"Termination or change in the employment of an employee insured under the group insurance plan immediately terminates the insurance, under the clause in the policy so providing, unless such employee applies for an individual policy provided for under the terms of the contract of insurance.　\*　\*　\*"

The question whether a contract should be construed under the laws of the state of its adoption and performance is recognized by this Court in the case of *Cantey v. Philadelphia Life Insurance Co.*, 166 S. C., 181, 164 S. E., 609, 611, in which this Court said: " 'It is a well-recognized principle of law in this state, as well as other jurisdictions, that the law of the place where a contract is made determines its validity. This rule is well and succinctly stated, as follows: "The validity and construction of a contract are determined by the law of the place where it is made.　\*　\*　\*" ' "

Appellant seems to think that the case of *Powell v. Equitable Life Assurance Society*, 173 S. C., 50, 174 S. E., 649, is applicable here. We do not think so. The question of the construction of the contract by the laws of the place where the contract was made and to be performed was not considered. In the case before us it was so considered at the instance of this appellant. Moreover, the facts and the evidence in the *Powell case* show that there was competent evidence which require the case to be sent to the jury.

Nor does the case of *Coker v. Aetna Life Ins. Co.,* 188 S. C., 472, 199 S. E., 694, lend support to his cause. The facts of that case differentiate it from the one now before us.

In the case of *Cogsdill v. Metropolitan Life Ins. Co.,* 158 S. C., 371, 155 S. E., 747, there was competent evidence to take to the jury the question whether the employee was covered by the group policy.

The judgment of this Court is that appellant's exceptions are overruled, and the judgment is affirmed.

It has been necessary to burden this opinion with long quotations from the cases and decisions cited by both counsel. The authorities cited were not conveniently accessible to the Court and we thought it just and fair to both sides that their authorities be fully laid before the Court.

MESSRS. JUSTICES CARTER, BAKER and STUKES concur.

MR. JUSTICE FISHBURNE concurs in result.