371 S.C. 5 (2006)
636 S.E.2d 862
DOCTORS HOSPITAL OF AUGUSTA, L.L.C., Plaintiff,
v.
COMPTRUST AGC WORKERS' COMPENSATION TRUST FUND, Defendant.
No. 26216.
Supreme Court of South Carolina.
Heard October 3, 2006.
Decided October 23, 2006.
*6 C. Mitchell Brown, of Nelson Mullins Riley & Scarborough, of Columbia, and Steven M. Wynkoop, of Nelson Mullins Riley & Scarborough, of Greenville, for Plaintiff'.
Clinton Jason Echols and Nathan Montgomery Rymer, both of Houston, Texas, Sterling G. Davis and Weston Adams, III, both of McAngus Goudelock and Courie, of Columbia, and G. Thomas Chase, of McAngus Goudelock and Courie, of Greenville, for Defendant.
Chief Justice TOAL:
This is a certified question dealing with the workers' compensation commission's (the Commission's) jurisdiction to review *7 a fee dispute between an insurance carrier and an out of state medical provider.

FACTUAL/PROCEDURAL BACKGROUND
Audrey Cooper (Employee), a South Carolina resident, suffered severe injuries when he encountered a high voltage electrical line in an on-the-job injury that occurred in South Carolina. For approximately two months, Doctors Hospital of Augusta (Doctors Hospital), a privately owned limited liability company providing medical care and related services in Augusta, Georgia, treated Employee for his extensive injuries.
Employee was injured while working for a South Carolina company that procured workers' compensation insurance from CompTrust, a South Carolina self-insured workers' trust fund. After admitting Employee to its facilities for treatment, Doctors Hospital contacted CompTrust to verify Employee's insurance coverage and to obtain a guarantee of payment. The insurance verification form used by Doctors Hospital provided in pertinent part:
Georgia Workers Compensation Fee Schedule only applies to Georgia Workers Compensation claims. Out of state fee schedules do not apply to care rendered in Georgia hospitals. Please be aware that our hospital will not accept, in satisfaction of our charges, Fee Schedule payments made pursuant to the workers compensation fee schedule of other states.
Although the parties dispute the precise events relating to the guarantee of payment and verification of coverage, it is undisputed that CompTrust verified that it issued workers' compensation insurance covering Employee. Doctors Hospital began treating Employee, and although CompTrust paid a portion of Employee's medical bills associated with his treatment, at some point, CompTrust and Doctors Hospital reached an impasse regarding the total bill for Employee's treatment. Consequently, Doctors Hospital sued CompTrust in the United States District Court for the District of South Carolina to recover the unpaid balance of Employee's medical bills.[1]
*8 CompTrust moved to dismiss the complaint, or alternatively, to stay the action, arguing that the Commission's medical services division was the exclusive forum for resolving this fee dispute. Pursuant to Rule 228, SCACR, this Court accepted the following certified question from United States District Judge G. Ross Anderson, Jr.:
Does the Commission have jurisdiction over fee disputes relating to fees charged by an out of state medical provider for services performed outside South Carolina relating to a workplace injury occurring in South Carolina, and, if it has jurisdiction, is it exclusive?

LAW/ANALYSIS
This certified question asks whether the statutorily created process for resolving fee disputes between a workers' compensation insurer and a medical provider applies to an out of state medical provider who performs medical services outside of South Carolina relating to a workplace injury occurring in South Carolina.[2] We answer "no."
In Ex parte First Pa. Banking & Trust Co., 247 S.C. 506, 507-08, 148 S.E.2d 373, 374 (1966), this Court addressed the question of whether a South Carolina resident involved in an automobile accident in North Carolina could enforce a South Carolina "collision lien" statute against the at-fault driver, a Pennsylvania resident. In holding that the statute did not apply, this Court stated "[w]ith such exceptions which are without significance here, the jurisdiction of a state is restricted to its own territorial limits." Id. at 508, 148 S.E.2d at 374 (citing 81A C.J.S. States § 34).
We are not alone in honoring this principle. Indeed, the United States Supreme Court has stated:
The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from *9 all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions.
Pennoyer v. Neff, 95 U.S. (5 Otto) 714, 722, 24 L.Ed. 565 (1877). Although the Supreme Court has redefined the scope of due process as it applies to a state's ability to exercise personal jurisdiction over a non-resident individual or entity since Pennoyer, see Shaffer v. Heitner, 433 U.S. 186, 196-204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (holding that due process does not require "physical presence" in the forum state, but extends to persons possessing sufficient contact with a state which makes it reasonable to require them to defend a lawsuit there), the principle that state statutes generally have no extra-territorial effect remains a foundation of the respect for individual sovereignty the states must share with one another.
It is a bit perplexing that a South Carolina court was ever involved in this case. This case involves a contract for medical services that was entered into and performed entirely in Georgia. As this Court has stated, "a contract is controlled by the laws of the State in which it is made and is to be performed." Murphy v. Equitable Life Assurance Soc'y of the United States, 197 S.C. 393, 407, 15 S.E.2d 646, 651 (1941). Of course, an out of state medical provider could contractually agree to be bound by the South Carolina workers' compensation statutes and procedures, but the construction of a contract is beyond the scope of the question certified to this Court.
Accordingly, we answer that the Commission does not have jurisdiction over fee disputes relating to fees charged by an out of state medical provider for services performed outside South Carolina relating to an injury occurring in South Carolina.[3]

*10 CONCLUSION
For the foregoing reasons, we answer "no" to the certified question in this case.
MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.
NOTES
[1] Specifically, Doctors Hospital's sued for $911,430.58 outstanding on Employee's total bill of $1,332,355.92.
[2] S.C.Code Ann. § 42-15-90 (1985) provides that medical bills relating to injuries covered by workers' compensation are subject to the Commission's approval. This approval process is detailed in 25A S.C.Code Ann. Regs. 67-1305 (Supp.2005), which provides that a fee dispute between a medical provider and an employer or insurance carrier is referred to the Commission's medical services division for a final resolution.
[3] Because this case raises a question only of the territorial limits of the authority of state statutes, we are not asked to decide the impact of regulation 67-1305 on this Court's holdings in Baker Hosp. v. Firernans Fund Ins. Co., 314 S.C. 98, 100-01, 441 S.E.2d 822, 823 (1994) (holding that the workers' compensation act does not preclude a suit in circuit court brought by a medical provider against a compensation insurance carrier for the balance of unpaid medical bills relating to an employee's treatment), and Blue Cross & Blue Shield v. South Carolina Indus. Comtn'n, 274 S.C. 204, 262 S.E.2d 35 (1980) (holding that an employee's private insurance carrier lacks standing to intervene in proceedings before the Commission). Accordingly, we leave those questions for another day.