**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1952**

AMERICAN CONTRACTORS INDEMNITY COMPANY,

Plaintiff – Appellant,

v.

CAROLINA REALTY AND DEVELOPMENT COMPANY INCORPORATED; JOHN PAUL BAEHR; KIMBERLY BAEHR; WILLIAM LAMAR BAEHR; DUFFY BAEHR; JOHN BAEHR; JANIS BAEHR,

Defendants – Appellees,

and

MILLICENT BOZEMAN; WILLIAM S. BOZEMAN; CHAD CLARK; MARY CLARK,

Defendants.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Timothy M. Cain, District Judge. (7:09-cv-02145-TMC)

Argued: May 15, 2013                    Decided: June 19, 2013

Before TRAXLER, Chief Judge, and GREGORY and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jeff B. Slagle, THOMPSON & SLAGLE, PC, Johns Creek, Georgia, for Appellant. John S. Simmons, SIMMONS LAW FIRM, LLC, Columbia, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant American Contractors Indemnity Corporation ("American Contractors") filed the instant action in the United States District Court for the District of South Carolina seeking to enforce an indemnity agreement entered into with Appellee Carolina Realty and Development Incorporated ("Carolina Realty").[1] The district court entered judgment in favor of Carolina Realty, finding that the claim for indemnification was barred by a settlement agreement entered into by the parties. American Contractors appealed the district court's decision. For the reasons that follow, we affirm.

I.

American Contractors is a commercial surety that issues construction payment and performance bonds. In accordance with standard industry practice, American Contractors issues bonds to general contractors or subcontractors, financially guaranteeing the (sub)contractor will perform its contractual obligations with an obligee. Should the bonded (sub)contractor fail to

---

[1] The other named Appellees, John Paul Baehr, Kimberly Baehr, William Lamar Baehr, Meredith Baehr, John Baehr, and Janis Baehr signed the indemnity agreement in their individual capacities as agents for Carolina Realty. Only John Paul Baehr, Kimberly Baehr, and Duffy Baehr were represented on appeal. For the purposes of this opinion, the parties will be referred to collectively as Carolina Realty.

perform its contractual obligations, such as paying laborers or suppliers, the obligee can seek redress from American Contractors as the surety.

Dick Corporation was named general contractor for the NAS Pensacola, Aviation Rescue Swimmers School and Physical Fitness Center project (the "Florida Project"). Dick Corporation in turn hired Carolina Realty as a subcontractor for the Florida Project to perform roofing work. The subcontract required Carolina Realty to obtain payment and performance bonds and as such, Carolina Realty applied to American Contractors for the necessary bonds. In line with standard practice, before issuing the bonds, American Contractors required Carolina Realty to execute a General Agreement of Indemnity ("Indemnity Agreement") to insure against potential losses. In the Indemnity Agreement, Carolina Realty agreed to "indemnify and hold [American Contractors] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses" that arise from any bond claims. Carolina Realty executed the Indemnity Agreement on July 6, 2006, and the payment and performance bonds were issued on or about August 22, 2006.

Beginning in 2008, American Contractors began receiving claims on the payment bond it had issued to Carolina Realty from labor and material suppliers. In July of that year, one

4

supplier and one subcontractor of Carolina Realty filed suit against Dick Corporation in the United States District Court for the Northern District of Florida, asserting a payment bond claim against the bond that Dick Corporation had itself taken out for the Florida Project. Dick Corporation filed third party complaints naming American Contractors and Carolina Realty as third-party defendants. Dick Corporation also asserted a performance bond claim against American Contractors based on Carolina Realty's alleged deficient performance of the subcontract. Carolina Realty filed a counterclaim against Dick Corporation. American Contractors did not assert any counterclaims. Ultimately, several lawsuits were filed by a number of parties alleging breaches of various contracts entered into for the Florida Project. These lawsuits were consolidated for purposes of discovery and trial (the "Florida Litigation").[2]

In 2009, American Contractors sent a demand letter to Carolina Realty, insisting it post $650,000.00 in collateral security -- an amount thought sufficient at the time to indemnify American Contractors for the expenses it had incurred

_____

[2] The other consolidated cases were captioned as United States of America for the use and benefit of Bradco Supply Corp. v. Dick Corp., et. al. and United States for the use and benefit of Infinity Builders of the Emerald Coast, LLC v. Continental Ins. Co. et al., Consolidated Civil Action No. 3:08-cv-56-MCR-MD (N.D. Fla.).

5

to date on the payment and performance bonds issued to Carolina Realty. Carolina Realty did not respond to the request. On August 13, 2009, while the Florida Litigation was still pending, American Contractors filed the instant action against Carolina Realty, seeking indemnification for expenses it had incurred as a result of the issued bonds, including repayment of the money spent paying bond claims and attorneys' fees for the litigation.

Meanwhile, settlement talks between the various parties to the Florida Litigation were transpiring. In the settlement talks, Carolina Realty did not represent itself. Instead, American Contractors' attorney, Frank Lanak, negotiated the agreement on behalf of Carolina Realty pursuant to the power-of-attorney provision in the Indemnity Agreement, as Carolina Realty objected to settlement. On February 10, 2011, the parties to the Florida Litigation, including Dick Corporation, Carolina Realty, and American Contractors, entered into an agreement settling the suits embroiled in the Florida Litigation and releasing all claims between the parties arising out of the Florida Project ("Settlement Agreement"). In total, American Contractors paid Dick Corporation $262,250.00 in claims against the bonds taken out by Carolina Realty.

Once the Florida Litigation settled, discovery ensued in the instant action, as American Contractors still sought indemnification in the amount of $677,473.59, reflecting the

money it had paid in settlements, additional bond claims, costs, and attorneys' fees in connection with the bonds issued to Carolina Realty. Following discovery, both parties moved for summary judgment. Carolina Realty argued that the indemnification claim was barred by the Settlement Agreement entered into by the parties to end the Florida Litigation. American Contractors contended that the Settlement Agreement had no effect on its claim for indemnification.

The cross motions were referred to a magistrate judge, who concluded that the Settlement Agreement was not intended to release American Contractors' indemnification claim against Carolina Realty. As such, the magistrate judge submitted a report and recommendation to the district court recommending that American Contractors' motion for summary judgment be granted and Carolina Realty's motion be denied. The district court held oral argument on the magistrate judge's report on May 21, 2012. On July 9, 2012, the court issued an order declining to adopt the magistrate judge's conclusions, and instead granted Carolina Realty's motion to enforce settlement, or in the alternative, summary judgment. See American Contractors Indem. Co. v. Carolina Realty and Development Co., Inc., 2012 WL 2711802 (D.S.C. 2012). American Contractors timely appealed.

7

The district court heard this case pursuant to its diversity jurisdiction. See 28 U.S.C. § 1332. Therefore, we have jurisdiction under 28 U.S.C. § 1291. There is no choice of law provision in the Indemnity Agreement. As such, because the action was filed in the United States District Court for the District of South Carolina, South Carolina law, including its choice-of-law rules, applies to this action. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004). Under South Carolina law, "a contract is controlled by the laws of the State in which it is made and to be performed." Doctors Hosp. of Augusta, LLC v. CompTrust AGC Workers' Comp. Trust Fund, 636 S.E.2d 862, 864 (S.C. 2006). As all relevant acts regarding the settlement transpired in Florida, we employ Florida law to resolve the dispute,[3] and review the grant of summary judgment de novo. Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004).

### A.

The pertinent part of the Settlement Agreement reads:

> [the parties] fully and forever settle, release and discharge, each other, each of their predecessors, successors, assigns, agents, insurers, sureties,

---

[3] All parties agree that Florida law governs this matter.

attorneys, officers, directors and employees from any and all past and present claims, demands, damages, debts, or causes of action, in law or in equity, damages and losses of any and all kind or nature, whether contingent or fixed, known and unknown claims for known and unknown damages and which arise or may arise out of acts, omissions or events which occurred prior to the date hereof, arising out of or related to [the Florida Litigation], all other matters between the Parties relating to the [Florida] Project.

The Settlement Agreement goes on:

Not withstanding anything in this Settlement Agreement to the contrary, this Settlement Agreement and the releases contained here are strictly limited to the Federal Action, Bradco Action, Infinity Action, Dick Claims, Carolina Work, Carolina Claims, and all other matters between the parties relating to or arising out of the [Florida] Project.

Under Florida law, "[w]here the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." Crawford v. Baker, 64 So.3d 1246, 1255 (Fla. 2011). Further, when the language of a contract "is clear and unambiguous[,] a court cannot entertain evidence contrary to its plain meaning." Sheen v. Lyon, 485 So.2d 422, 424 (Fla. 1986).

We find the Settlement Agreement to be clear. Using broad and unequivocal language, American Contractors decided to "fully and forever settle . . . any and all past and present claims . . . between the Parties relating to or arising out of the [Florida] Project." American Contractors and Carolina Realty are named parties to the Settlement Agreement; they clearly fall

9

within its broad scope. The instant action was pending at the time the parties entered into the Agreement; it was most certainly a "present claim." American Contractors' indemnification claim "arose out of" the Florida Project. When the term "arising out of" is used as an exclusionary term, as it was here, Florida courts have looked to the plain dictionary definition of the term "arise" to conclude it means to "originate" or "result from." Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176, 181-83 (Fla. Dist. Ct. App. 1997). American Contractors seeks repayment for the money it paid out on the bonds it issued Carolina Realty; these costs "resulted from" Carolina Realty's allegedly deficient performance on the Florida Project and were therefore "fully and forever" settled by the Agreement. American Contractors also requests reimbursement for attorneys' fees incurred during the course of litigation; these fees "originated" in the Florida Litigation and are thereby foreclosed by the Settlement Agreement. In short, the plain and unambiguous language of the Settlement Agreement forecloses American Contractors' request for indemnification.[4]

---

[4] Even if we were to find the Settlement Agreement to be ambiguous, under Florida law any ambiguity is construed against American Contractors as drafter of Agreement. See Hurt v. Leatherby Ins. Co., 380 So.2d 432, 434 (Fla. 1980).

B.

Despite the clear language of the Settlement Agreement, American Contractors argues the above Agreement does not cover indemnification claims because: (1) the context of the Settlement Agreement evinces indemnity claims were not intended to be released; (2) Carolina Realty was not a true party to the Settlement Agreement as the Agreement was signed by American Contractors on Carolina Realty's behalf; (3) the instant action is not mentioned in the Settlement Agreement, showing that it was not included under the purview of the Settlement; and (4) the asserted indemnification claim does not "arise out of" the Florida Project. We find these arguments unpersuasive.

i.

American Contractors argues that indemnification provisions are essential to the successful operation of the construction bond industry. Therefore, it asserts that putting the Settlement Agreement in context, it is unreasonable to conclude that a commercial surety in the construction industry would waive its ability to bring an indemnification claim after having to pay out on an issued bond.

We have noted indemnification is critical to the successful operation of the construction bond industry. See Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983). This general premise does not

11

render any provision of the Settlement Agreement ambiguous, such that we may consider evidence outside of the four corners of the contract. See Sheen, 485 So.2d at 424. In accordance with Florida law, we cannot consider this context evidence. The general nature of the construction bond industry has no bearing on our resolution of this appeal.

Similarly, American Contractors argues that we should put ourselves in the shoes of the parties and consider the contract in light of their individual perspectives. See 11 Fla. Jur. 2d Contracts § 149. We can only do this, however, when the contract is ambiguous or the meaning of the contract is doubtful. See Ungaro v. West Palm Beach Biltmore Apartments, 61 So.2d 642 (Fla. 1952). As we just stated, American Contractors has not identified a single ambiguity in the Settlement Agreement. Therefore, regardless of how important indemnification is to sureties in the bond business, surety relationships were considered under the Settlement Agreement and all claims covered therein were still released.

ii.

American Contractors next argues that because Carolina Realty was represented by an American Contractors' attorney in the settlement talks, Carolina Realty is not a true party to the Settlement Agreement.

12

To accept this argument would mean the Settlement Agreement in toto has no effect as to claims asserted by or against Carolina Realty. This cannot be. The Settlement Agreement specifically lists Carolina Realty as a party to the Agreement. The Indemnity Agreement gave American Contractors the option of exercising power-of-attorney to represent Carolina Realty in settlement talks. American Contractors chose to exercise its power-of-attorney to settle the Florida Litigation on Carolina Realty's behalf over Carolina Realty's objection. American Contractors knowingly bound both itself and Carolina Realty by the deal reached.

iii.

American Contractors also argues that this action does not fall under the purview of the Settlement Agreement as it is not specifically mentioned in the Agreement. American Contractors reasons that this litigation was pending at the time the Settlement Agreement was entered into, and had it wished to include it in the Agreement, it would have done so expressly.

Again, this argument has no grounding in the words of the Agreement. The Settlement Agreement expressly released all involved parties from "any and all past and present claims" relating to/arising from the Florida Litigation and the Florida Project (emphasis added). To repeat, this indemnification action was a "present claim" at the time of the Settlement

13

Agreement. That it was not individually mentioned in the Agreement is of no moment. Moreover, while there is a carve-out provision in the Settlement Agreement exempting personal injury and property damage claims, there is no similar provision for indemnification claims. And the exclusion of indemnification claims from the Settlement Agreement's carve-out provision is evidence that the parties did not intend to "contract with respect to that matter." See Gulf Cities Gas Corp. v. Tangelo Park Svc. Co., 253 So.2d 744, 748 (Fla. Dist. Ct. App. 1971).

It is important to remember that American Contractors helped draft the Settlement Agreement. This is not a case of parties having lopsided legal acumen -- the Settlement Agreement was drafted and agreed to by American Contractors' attorneys, who are (presumably) well-apprised of the construction bond business and basic contract principles. If American Contractors wanted to exempt indemnification claims from the Settlement Agreement it had the ability and knowledge to do so, as evidenced by the fact that it expressly exempted other claims from the Agreement. American Contractors' attempt to carve out this indemnification action from the Settlement Agreement is contrary to the clear terms of the contract, and therefore contrary to Florida law.

14

iv.

American Contractors' final argument is that the indemnification claim did not "arise out of" or "relate to" the Florida Litigation or the Florida Project. American Contractors asserts that the claim arose from the Indemnity Agreement itself, and therefore, does not fall under the plain language of the Settlement Agreement.

The Settlement Agreement specifically includes the subcontract entered into by Dick Corporation and Carolina Realty, which required the payment and performance bonds at issue. These bonds are specifically mentioned in the recitals to the Settlement Agreement, and there is no dispute that bond claims were settled by the Agreement. As the district court reasoned, American Contractors would have no claim for indemnification had it not been for Carolina Realty's alleged lack of performance in relation to the Florida Project. Additionally, the attorneys' fees sought by American Contractors are for reimbursement for having to partake in the Florida Litigation -- this is exactly what the Settlement Agreement forecloses. The Indemnity Agreement was only activated when the Florida Project was alleged not to have been performed adequately by Carolina Realty. American Contractors' claim for indemnification arose from the Florida Project and the Florida Litigation; it is therefore barred by the Settlement Agreement.

15

III.

American Contractors drafted and executed a Settlement Agreement with extremely broad language.  It must now live by the terms of the contract.  For the reasons detailed herein, clear principles of Florida contract law require us to affirm the district court's judgment granting summary judgment in Carolina Realty's favor.[5]

<u>AFFIRMED</u>

---

[5] Agents of the named corporate entities were also parties to the Settlement Agreement.  The Settlement Agreement therefore covers the individual indemnitors who are parties to this appeal.  Our holding today applies to all named Appellees with equal force.

16