Agnes B. FAGAN, Elizabeth A. O'Rourke, Jane K. Cleary and William D. Fagan, Plaintiffs,

v.

JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Defendant.

No. KC-1032.

United States District Court
D. Kansas.

Dec. 29, 1961.

Carl E. Enggas and Colvin A. Peterson, Jr., of Watson, Ess, Marshall & Enggas, and Blake A. Williamson and A. C. Cooke, of Williamson, Cubbison & Vaughan, Kansas City, Kan., for plaintiffs.

Willard L. Phillips and John J. Jurcyk, Jr., of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant.

ARTHUR J. STANLEY, Jr., Chief Judge.

This is an action by beneficiaries to recover the proceeds of a group life insurance policy. The case has been submitted on stipulated facts for decision on its merits.

In 1942, Group Policy No. 83–G, hereinafter called the master policy, was issued by defendant, John Hancock Mutual Life Insurance Company, hereinafter called the Company, covering the deceased and certain other employees of Wilson & Company, Inc., hereinafter called Wilson. Also in 1942, individual Certificate No. 5353 was issued by the Company pursuant to the master policy and delivered to Wilson at Chicago, Illinois. Wilson in turn delivered it to the deceased.

Thereafter, deceased received a "rider" notifying him that in accordance with the master policy his insurance would terminate upon cessation of full-time permanent salaried employment with Wilson. In 1949, Wilson and the Company agreed to amend the master policy by providing for termination of coverage when an employee reached his normal retirement age if the employee was a member of the Wilson Retirement Plan at that time. The retirement plan was disassociated from the insurance plan and deceased was a member of the former.

No "rider" containing the amendment was sent to deceased. Deceased learned of the change through correspondence with Wilson approximately three months before his normal retirement date. The deceased continued to work for Wilson, past his normal retirement date, until his death on July 27, 1953. Simply stated, the question is whether the insurance terminated at the normal retirement date or whether deceased was still insured at the time of his death.

■ The initial question is what law governs the construction of this contract. The doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, applies to conflict of laws problems, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), so I must follow the rule laid down by Kansas. It has long been the law of Kansas that the *lex loci contractus* governs the construction of contracts. Hefferlin v. Sinsinderfer, 2 Kan. 401 (1864). Thus Kansas sends us to the place where the contract was made, but offers no further guidance as to where that place is under the peculiar circumstances surrounding issuance and delivery of a group insurance contract.

It is generally held that such contracts are made where the master policy and the individual certificate are delivered. Burns v. Aetna Life Ins. Co., 234 Mo. App. 1207, 123 S.W.2d 185 (1939); Murphy v. Equitable Life Assur. Soc'y, 197 S.C. 393, 15 S.E.2d 646 (1941). Where the master policy is delivered in one State and the certificate in another, the courts go both ways. E. g., Metropolitan Life Ins. Co. v. Anderson, 101 F.Supp. 808 (E.D.La.1951) (law of place where master policy delivered controls); Thieme v. Union Labor Life Ins. Co., 12 Ill.App. 2d 110, 138 N.E.2d 857 (1956) (law of place where certificate delivered controls).

■ Without deciding which rule Kansas would follow, I shall apply the law of Illinois because it is the only State with which any connection is shown.

■■ Plaintiffs allege that the insurance was in effect at deceased's death because the "rider" received by him so provided. Illinois law requires that individual certificates and "riders" be construed as part of the contract of insur-

ance. Thieme v. Union Labor Life Ins. Co., supra. Also, that in the event the terms of a master policy and a certificate are in conflict, the certificate will control. Konrad v. Hartford Acc. & Indem. Co., 11 Ill.App.2d 503, 137 N.E.2d 855 (1956). These cases, however, are not dispositive of the present question. The Thieme and Konrad cases dealt with resolution of ambiguities between different parts of a contract. The case at hand deals with contractual rights to modify a contract.

■■ Plaintiffs next urge upon the court cases which hold that the consent of the employee must be obtained to modify the contract. A contracting party must give consent, but it is difficult to see how the deceased employee can be placed in that category. The fact that a master policy and certificate are construed together does not create a contractual relationship between employee and insurer. Kloidt v. Metropolitan Life Ins. Co., 18 N.J.Misc. 661, 16 A.2d 274 (1939). I shall, therefore, follow the majority rule, which I believe to be the better reasoned one, that no consent is necessary. Metropolitan Life Ins. Co. v. Korneghy, 37 Ala. App. 497, 71 So.2d 292, 68 A.L.R.2d 239, petition for cert. dismissed, 260 Ala. 521, 71 So.2d 301 (1954); Butler v. Equitable Life Assur. Soc'y, 233 Mo.App. 94, 93 S.W.2d 1019 (1936); Miller v. Travelers Ins. Co., 143 Pa.Super. 270, 17 A.2d 907 (1941).

■ At this juncture, plaintiffs allege that since no notice of the amendment was given to deceased, it was not effective. Although deceased was not a party to the insurance contract, he did have rights under it. For example, he could designate beneficiaries. He could also convert to an individual policy within thirty-one days after termination of coverage under the group policy. The weight of authority is that notice must be given the employee of any modification of the contract which affects his rights. Hayes v. Equitable Life Assur. Soc'y, 235 Mo.App. 1261, 150 S.W.2d 1113 (1941); Poch v. Equitable Life Assur. Soc'y, 343 Pa. 119, 22 A.2d 590, 142 A.L.R. 1279 (1941); Johnson v. Inter-

Ocean Cas. Co., 112 W.Va. 396, 164 S.E. 411 (1932). This is a sound rule. Unless an employee is notified of coverage termination, he cannot take advantage of his conversion rights.

■ The remaining question is whether deceased received notice. Neither the Company nor Wilson sent a notice to deceased prior to September 3, 1952. On that date, three months before deceased's normal retirement date and after he had agreed to postpone his retirement, deceased received a letter from the Wilson Employees' Retirement Board. The second paragraph of the letter reads:

"Since your retirement allowance vests on December 1, 1952, your group life insurance with the Company will be cancelled as of that date. However, you have the privilege of converting all or any part of it within 31 days after cancellation into another form of insurance at the rates in effect for your age."

The deceased replied to the Board's letter on September 12, 1952:

"I am also under the impression that inasmuch as I elected to defer my retirement until December 1, 1953, that my insurance should carry on as long as I am employed by the Company. I mean, on the same basis I am on at present."

The Board wrote again on September 16, 1952:

"As stated in our letter of September 3 your Group Life Insurance will be cancelled as of your normal retirement date, which is December 1, 1952. The fact that you will continue in the employment of the Company does not change the status for Group Insurance. In other words, your Insurance will be cancelled the first of the month after attainment of age 65 regardless of whether or not you continue your employment with the Company."

On December 16, 1952, a Mr. P. W. Seyl of Wilson's Chicago office replied to a letter from deceased who apparently had made further inquiry about the in-

surance. The letter from Seyl reads in part:

"As for the group insurance, this is automatically discontinued when an employee reaches age sixty-five with the privilege of converting all or part of it within a period of thirty-one days at rates in effect at age sixty-five. Also, you are not required to submit to a physical examination to continue the policy or to convert it to another form of insurance."

The reason for the rule of notice is to secure to the employee an opportunity to take advantage of his conversion right or to procure other insurance coverage. No formal notice is required. I hold that the three letters to deceased were sufficient notice of the amendment. Such notice afforded him ample opportunity to exercise his rights under the insurance contract. Judgment will be for the defendant.

Counsel will submit an appropriate journal entry.