Kathleen M. CHROBAK,
Plaintiff-Appellee,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, a Foreign Corporation,
Defendant-Appellant.

No. 73–2072.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1974.

Decided June 13, 1975.

Owen Rall, Joseph J. Hasman, Ellen J. Kerschner, Chicago, Ill., for defendant-appellant.

Michael A. Dunn, Chicago, Ill., for plaintiff-appellee.

Before HASTIE, *Senior Circuit Judge,** and SWYGERT and PELL, *Circuit Judges.*

PELL, *Circuit Judge.*

This is an appeal by the Metropolitan Life Insurance Company from a judgment for $23,000 entered on a jury verdict in a suit on a group life insurance policy issued to the United States Civil Service Commission. The disputed question is whether the deceased federal employee, William P. Chrobak, was covered by "optional insurance" which was to become effective on "the first day [he] actually enter[ed] on duty in a pay status on or after April 1, 1970."

While two errors relating to instructions are advanced by Metropolitan, its principal contention is that a directed verdict should have been granted in its favor. Since there was no real disputation as to the facts, we are of the opinion that only a legal question was presented.

* Senior Circuit Judge William Henry Hastie of the Third Circuit is sitting by designation.

Deceased was a computer specialist for the Railroad Retirement Board, which comes under the protection of the United States Civil Service Commission. The Commission is authorized by statute to promulgate regulations to provide life insurance for federal employees. 5 U.S.C. § 8716(b). Pursuant to this purpose, the Commission secured a contract of group insurance with Metropolitan providing for regular and optional insurance. Optional insurance is paid for by covered employees and is the subject of this appeal. Section 2 of the master policy provides that eligibility for optional insurance and the effective dates of this insurance shall be determined by regulations adopted by the Commission. The Commission issued such a regulation, 5 C.F.R. § 871.205(c), which provided:

"An employee who has declined the optional insurance may elect by filing Standard Form 176, completed to show that he wants both optional and regular insurance, with his employing office during the period of March 1 to March 31, 1970. The effective date of the optional insurance in such case is the first day the employee *actually enters on duty in a pay status* on or after April 1, 1970." (Emphasis added.)

The Civil Service Commission published an informational brochure concerning insurance and distributed it to federal employees informing them of this "open season" (a period in which optional insurance could be obtained without medical examination). The brochure provided that "coverage will become effective on the first day that you are *on pay and duty status* after March 31, 1970." (Emphasis added.)

Chrobak was eligible for optional insurance and properly filed an application prior to April 1, 1974. He received a Certificate Supplement for the optional insurance. The Certificate does not mention the effective date but clearly states that it is only a summary of the policy, not an insurance contract. He also received a notification of personnel action from the Commission indicating the insurance change; this showed an effective date of April 1, 1974.

Chrobak normally worked about eight hours per day starting at 8:00 A.M. although the computer was operated 24 hours per day. During the period he was not working, he was on call and was required to report to work if an emergency arose; but he was otherwise free to spend his time as he pleased. He worked as usual on March 31, 1974. That evening he had some men from work at his home and left to drive them home about 1:00 A.M. on April 1, 1974. About 2:00 A.M. he was killed in an accident. The Commission sent Mrs. Chrobak a notification of personnel action showing that Mr. Chrobak was covered by regular and optional insurance at the time of his death. Nevertheless when a claim was filed, Metropolitan denied that Mr. Chrobak was covered. This law suit resulted.

It is undisputed that Chrobak was on pay status on April 1, 1974. Hence he met the one condition of coverage. Defendant argues that the decedent was never physically present at work on April 1, 1974, and that therefore he never actually entered on duty. There was no evidence that Chrobak was called into work between the time he left home and the time of the accident, and it is undisputed that he never was physically present at work on April 1, 1974.

Plaintiff argues that physical presence is not the controlling issue and that we should affirm the court below on two bases: First, all that was required for coverage insofar as "duty" was concerned was to be on duty status on April 1. Reliance is placed upon the informational brochure of the Civil Service Commission in which it is stated that coverage becomes effective on the first day one is "on pay and duty status after March 31, 1970." Indeed, it is argued, the Technical Assistant to the Chief of the Legislative Policy Division, Bureau of Retirement, Insurance and Occupational Health for the Commission, a witness for the defendant, in his testimony paraphrased the regulation by referring

to duty and pay status. We note, however, at this point that this witness from the Commission also testified that "[t]he phrase 'on duty,' as we have inserted it in the regulations, is specifically to mean actual entrance on duty and performance of duty. Simply being in a pay status is not sufficient."

Being on duty status, according to plaintiff, does not require physical presence on a particular day but only requires the expectation that a person will work when his shift occurs and that he is not on some other status such as sick leave or vacation status. In support of this position, plaintiff cites 5 C.F.R. § 831.1206, a regulation pertaining to disability retirement, in which "duty status" is used in the sense of coming to work on a day-to-day basis. Plaintiff also argues that this interpretation is sufficient to fulfill the purpose of the clause in the regulation—to prevent persons so ill as to be unable to perform their duties from obtaining insurance thereby avoiding adverse risk selection.

Plaintiff's second basis for affirming is that decedent was on call from midnight on the morning of April 1, 1970, as he always was when off duty, and that this was a sufficient duty to activate the policy.

No case exactly in point has come to our attention although Metropolitan has cited several cases arising out of the particular regulation and policy. In *Helland v. Metropolitan Life Insurance Company,* 488 F.2d 496, 497 (9th Cir. 1973), the court reversed an award under the policy where the decedent, who had died in April 1970, had never actually entered on duty, stating:

"Because he was on sick leave, decedent was on pay status. But this does not mean that he was on duty. The words 'actually enters on duty in a pay status' refer to two separate states of being: 1) on duty; and 2) in a pay status. We find support for our conclusion in the 1956 modification of life insurance regulations to require actual entrance on duty in addition to the previous requirement of service in a pay status as a condition precedent to acquiring regular life insurance coverage. 21 Fed.Reg. 8479 (Nov. 6, 1956). After the optional life insurance program was established in 1967, the Civil Service Commission issued optional life insurance regulations, including Section 871.205(c), Title 5, Code of Federal Regulations, requiring actual entrance on duty in a pay status. Since no physical examination is required, the purpose of requiring an employee to be actually on duty is presumably to insure a certain modicum of health on his part.

We therefore hold that under Section 871.205(c), Title 5, Code of Federal Regulations, an employee must be both (1) in a pay status and physically present on the job, and (2) performing his duties on or after April 1, 1970, in order to effectuate coverage. *See* Boyer v. Travelers Insurance Co., 7 Cal.2d 615, 61 P.2d 925 (1936)." (Footnote omitted.)

The same result was reached in an unreported federal district court case, *Moss v. United States Civil Service Commission,* No. 71–41 Orl.Civ. (M.D.Fla. July 27, 1971), in which the district court stated: "The phrase 'duty status,' particularly when specifically inserted in the conjunctive form 'pay *and* duty status,' must be construed to mean physically working at one's assigned position." [1]

The plaintiff challenges the authority of these cases since all apparently involved persons who were on a pay status on April 1 but because of prior illness could not conceivably have been considered to be on duty status. While these cases are thereby distinguishable and no doubt their authority is also diluted by the factual distinction, nevertheless we accept the reasoning that the

1. A similar result has been reached in two unreported cases from state trial courts, *Stockton v. Metropolitan Life Insurance Company,* Chancery Court for Fentress County, Tenn., Civil Action No. 3334 (November 10, 1971), and *Wampler v. Metropolitan Life Insurance Company,* Chancery Court for Hamilton County, Tenn., No. 44787 (June 13, 1972).

reference to duty means something more than merely being on the payroll. While the Ninth Circuit speculated as to the purpose of making a separate condition of coverage the actual entry on duty, the fact is clear that irrespective of the actuating motive it is an independent requirement for coverage. The Florida district court case approached the construction problem on the basis of the language in the informational brochure of "pay and duty status" and nevertheless reached the result in the case of the ill employee that there was no coverage.

While no doubt semantical arguments might be put forth on the matter of whether the term "duty status" would be sufficiently broad to encompass one who had been regularly working prior to April 1, and the parties indeed have advanced such pro and con arguments, the ultimate determination of the question before us requires us to look at the wording of the policy, not the informational brochure, and that wording is not "duty status" but "actually enters on duty." [2]

█ It is axiomatic "that words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary." *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975). We know of no reason for applying a different approach here, particularly in view of the fact that the controlling words are found in a promulgated governmental regulation incorporated by reference into the master policy.

"On duty" or similar phrases have been construed in other areas of the law as meaning physical presence on the premises, even in the absence of the explicit "actually enters" that is found in the present case. *Great American Indemnity Co. v. Southern Feed Stores,* 51 Ga.App. 591, 181 S.E. 115 (1935); *Milkes v. United States Fidelity & Guaranty Co.,* 257 Ill.App. 65 (1930).

Further, we note that the interpretation that the words "actually enters on duty" mean what they plainly say is that which the governmental agency involved has placed upon the words. This, even if it may not be controlling, is to be given some deference. *Contractors Association v. Secretary of Labor,* 442 F.2d 159, 175 (3d Cir. 1971), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95.

The invariable concomitant of a line being drawn for the achievement of a benefit is that those who barely fall short of crossing the boundary suffer a loss. Accompanying this situation is a human urge to bend the line. To do so, however, is also to decide the case on some basis other than that of the law. There could be no argument made that if Chrobak had died three hours earlier no claim could have been successfully made; conversely if the fatal accident had happened at noon of April 1 after he had actually entered on duty that morning, the claim would have been payable. Someplace in between, the boundary demarcation existed. It is our holding under the plain language of the policy that the point of coverage had not been reached.

The result is unchanged by the fact that the decedent was on call. The case would have been different if he had actually been called in, but he was not. It might well have been different if he had been required to remain at lodgings connected with the computer center. We do not need to decide these hypothetical situations for Chrobak was on his own time, free to go and come as he pleased in the absence of an actual call. Under these circumstances it cannot be said that he had entered on duty. *See Dumas v. King,* 157 F.2d 463, 466 (8th Cir. 1946); *Johnson v. Daily News, Inc.,* 34 N.Y.2d 33, 356 N.Y.S.2d 1, 312 N.E.2d 148 (1974).

█ During oral argument on this appeal there was discussion of whether the

2. We are aware that under the laws of some states a certificate issued under a group policy may control the policy, *Fagan v. John Hancock Mutual Life Insurance Co.,* 200 F.Supp.

142 (D.C.Kan.1961), (applying Illinois law); but we are aware of no cases which hold that an informational brochure may control the terms of the policy.

premium had been collected and if so whether this would in any way afford coverage. It was also indicated, however, that the premium had been refunded. In any event, we need do no more than note that in situations of this sort the payment procedure on a group policy and the wheels of government in connection therewith move ponderously and are not geared to the individual developments departing from the expected norm, which individual developments must, as here, be the subject of subsequent individual adjustment. The coverage of the policy cannot be expanded by the erroneous payment of premium, nor can it be by the routine issuance of any notice pertaining to the policy issued without cognizance of the fact of death. The effective coverage only applied to those persons who had met the conditions for coverage.

For the reasons set out herein, the judgment of the district court is reversed and the cause is remanded with directions to enter judgment for the defendant.

Reversed and remanded.

SWYGERT, *Circuit Judge* (dissenting).

On March 31, 1970 and for at least ten days before that William Chrobak was not on vacation or sick leave. Rather, he was on duty status. Each day during that period he had worked eight or nine hours and had been subject to being called to work at hours of the day other than his regular shift. He had worked on Monday and Tuesday of the week of March 30, 1970. On Wednesday at 2:30 a. m. he was killed in an automobile accident; he was scheduled to work later in the day. The last paycheck covering the employment of William Chrobak included eight hours for April 1, 1970. (This recorded time does not represent that Chrobak actually worked on April 1, but only that he was on pay status for that day.)

The pertinent part of the governmental regulations (incorporated in the policy) provided: "The effective date of the optional insurance . . . is the *first* day the employee *actually enters* on duty in a pay status on or after April 1, 1970." (Emphasis added.) The court rules that this provision required that Chrobak be physically on the job on April 1, 1970 if the policy were to become effective. I do not believe this narrow interpretation of the regulation is required.

There is nothing in the record to contradict the presumption that the Metropolitan Life Insurance Company charged a premium for coverage for the full twenty-four hours of April 1, 1970. In other words, it did not prorate, on an hourly basis, its premium for the first day of April 1970 even when an employee who applied for the optional insurance actually "punched in" for duty at some point in time after midnight, March 31. Except for the fortuitous circumstances of his fatal accident, Chrobak would have gone to work at his regular hour on April 1. Moreover, he was subject to be called to work at any time after midnight, March 31, that is, even prior to his regular shift on April 1. All these circumstances leave no doubt in my mind that the regulation should be interpreted so as to permit recovery. The defendant's position, to my way of thinking, is hypertechnical. It clings to formalities, choosing to overlook the intended meaning of the regulation in relation to the facts of this case.

I would affirm the judgment of the district court.