**Herbert E. MARTZ, Plaintiff,**

v.

**The UNION LABOR LIFE INSURANCE COMPANY, Defendant.**

**No. 82 C 20083.**

United States District Court, N.D. Illinois, W.D.

Oct. 25, 1983.

Albert Manus, Freeport, Ill., for plaintiff.

James B. Davidson, Joseph J. Hasman, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., David Connolly, Thomas Laughlin, Connolly, Hickey & Oliver, Rockford, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are cross-motions for summary judgment filed by the plaintiff, Herbert E. Martz, and the defendant, The Union Labor Life Insurance Company. For the reasons stated herein, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied.

Jurisdiction is invoked pursuant to 28 U.S.C. § 1332. Plaintiff is a resident of Illinois, and the defendant is a Maryland corporation authorized to do business in Illinois. The matter in controversy, exclusive of interest and costs, exceeds the sum of Ten Thousand Dollars ($10,000).

The undisputed facts are as follows.

The plaintiff, Herbert E. Martz, was a member of the Central Laborers Union. As a union member, plaintiff was insured by the Union Labor Life Insurance Company under a group policy. The policy covered medical and hospital bills up to a maximum of $100,000 per calendar year.

Termination or modification of the policy was provided for under the policy terms, which stated:

TERMINATION AND CHANGE OF POLICY ...

On any premium due date the Policyholder may terminate this Policy or, subject to the Company's approval, may modify, amend or change the provisions, terms and conditions of this Policy. The Company's written consent shall be required to make any such modification, amendment or change, but the consent of any insured Person or any other Person referred to in this Policy shall not be required to effect such termination or any modification, amendment or change of this Policy.

In early August 1980, Donald Dippold, Executive Administrator of the union's welfare fund, began to look for ways to reduce the costs of the insurance plan. He contacted Richard Falcone, Union Labor Insurance Company's Midwest Regional Mana-

ger of Claims and Service. Falcone suggested a subrogation provision for containing the cost of premiums, and Dippold requested that Falcone outline, in writing, his suggestions regarding the subrogation provision. Falcone then wrote a letter to Dippold recommending the adoption of the subrogation provision. Falcone attached an executed copy of Union Labor's standard subrogation provision rider. The rider provided:

> SUBROGATION. The Company shall be subrogated to the extent of any benefits paid under this Contract, to the proceeds of any settlement or judgment effected against a third party and resulting from the exercise of any rights of recovery which the Person may have against any person or organization. The Person claiming benefits under this Policy shall execute and deliver such instruments and take such other action as the Company may require to implement this provision. The Person shall do nothing to prejudice the rights given the Company by this provision without its consent.

The Trustees of the Central Laborers Union Welfare Fund met on October 28, 1980 to consider the subrogation provision. At this meeting the trustees reviewed and unanimously voted to amend the policy to include the subrogation provision. The Rider adopted stated that the subrogation provision was to be effective on and after October 28, 1980.

A little less than a month later, a freight train struck the plaintiff as he was driving his pick-up truck near Lena, Illinois. He suffered severe injuries, was hospitalized, and was treated by various doctors.

After the plaintiff was injured, two actions were taken regarding the insurance policy. First, on December 9, 1980, the trustees of the union's fund formally signed the subrogation rider which was approved in the October 28, 1980 meeting. Second, in mid-December, union members were given notice that the insurance policy had been modified through the addition of the subrogation provision. It is undisputed that the plaintiff received his notice on December 18, 1980.

After incurring medical and hospital costs, the plaintiff filed claims with the insurer. The insurer paid claims amounting to approximately $44,750.00. The insurer then requested the plaintiff to sign a subrogation agreement, authorizing them to proceed against the railroad involved in the accident. Plaintiff refused, contending that the insurer had no right to subrogation. Upon plaintiff's refusal, the insurer immediately ceased paying plaintiff's medical and hospital bills.

Plaintiff then commenced this action seeking a declaratory judgment that the subrogation provision has no binding legal effect upon him. Plaintiff raises four contentions: 1) that the subrogation provision was not adopted in accordance with the Master Plan's procedures for amending the policy; 2) the modification, if valid, did not take effect until December 9, 1980, the day the rider was signed; 3) prior notice of any change to the insured is required by law and plaintiff did not receive notice of the modification until December 18, 1980; and 4) The Rider's subrogation language had not been approved by the Illinois Department of Insurance and is therefore invalid.

Plaintiff seeks a declaration that the subrogation provision has no binding effect upon him and a ruling that the defendant must pay plaintiff's hospital and medical bills.

The plaintiff also seeks attorney's fees, costs and statutory penalties under Ill.Rev. Stat. ch. 73 § 767 (1981). Section 767 permits recovery of fees, costs, and penalties when an insurer has vexatiously refused to pay benefits under an insurance policy. Plaintiff contends that defendant's decision to cease payment of his hospital bills after he had refused to sign the subrogation authorization constitutes willful and vexatious conduct.

Both parties, alleging that there are no material issues of fact, have moved for summary judgment on the liability issue. The plaintiff claims he is entitled to judgment for the four reasons set forth in his

complaint; the defendant, in turn, contends that the amendment to the policy was lawfully adopted and is therefore binding on the plaintiff.

Federal Rule of Civil Procedure 56 provides that a summary judgment shall be rendered if "no genuine issue as to any material fact" exists. The Court in *Rigsby v. Mutual of New York*, 331 F.2d 353, 354 (10th Cir.1964), held that when the "only issue was the application of the provisions of the [insurance] contract" use of summary judgment is proper. Here, where the court can resolve the legal questions raised by reference to the contract and established principles of law, summary judgment is appropriate.

Because consideration of the notice issue resolves the liability question, the Court will address the notice issue first.

### A. Notice

The majority of jurisdictions in this country require notice [1] to the insured employee before the employer or the group insurer can cancel or modify benefits under a group policy. The Kansas Supreme Court, in adopting this majority rule, observed that:

> It is clear that in other jurisdictions the weight of authority holds that *without reasonable notice to the contributing employee, neither the employer nor the insurance company may cancel or modify the benefits* under a group insurance before liability has attached so as to deprive the employee or his beneficiary of rights under the policy.

*Ogden v. Continental Casualty Company*, 208 Kan. 806, 494 P.2d 1169 (1972) (emphasis supplied). Legal commentators have also noted the prevalence of the majority rule. *See* 68 A.L.R.2d 249, Cancellation or Modification of Master Policy As Termination of Coverage Under Group Policy, § 12 (1959).[2]

The majority position is grounded upon two policy considerations. First, there is a recognition that the insured employee, if not a party to the insurance contract, at the very least has significant rights under the policy which should be protected. In *Fagan v. John Hancock Mutual Life Insurance Company*, 200 F.Supp. 142 (D.Kan. 1961), the court applied the majority rule, in part, because:

> *although deceased was not a party to the insurance contract, he did have rights under it.* For example, he could designate beneficiaries. He could also convert to an individual policy within thirty-one days after termination of coverage under the group policy. The weight of the authority is that *notice must be given the employee of any modification of the contract which affects his rights.*

*Id.* at 144. (emphasis supplied). And where the employee contributes to the cost of the group policy, the courts have been especially diligent in requiring notice of any change affecting rights under the policy. In *Ogden, supra,* the Kansas Supreme Court reasoned that:

> where the employee pays a portion of the premiums he has valuable rights in the policy and therefore notice should be given him of any modification of the contract which might effect those rights.

*Ogden,* 494 F.2d at 1172.

Second, the notice requirement allows the insured to exercise conversion rights or to obtain alternative coverage so that no gap in protection arises. The Pennsylvania and Alabama Supreme Courts have required notice to the insured:

> So that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or,

---

**1.** The court is aware that the policy expressly provides that the *consent* of the insured is not required to modify the policy. Consent is, however, a separate issue apart from the independent question of whether *notice* of modification is required. *See* 68 A.L.R.2d 249 (1959).

**2.** This annotation and its later Case Service Supplement comprehensively catalogue the decisions embracing the majority and minority positions and the reader is referred there for a complete listing of decisions addressing the notice issue.

where such privilege is not given, in order that he may reasonably obtain similar insurance protection on his own account elsewhere.

*Harrison Insurance Co. of North America,* 294 Ala. 387, 318 So.2d 253, 258 (Ala. 1975) *quoting Poch v. Equitable Life Assurance Society,* 343 Pa. 119, 22 A.2d 590 (1941).

A minority of jurisdictions, in contrast, hold that an employer may validly cancel or modify a master group policy without notice to the insured employee. *E.g. Kimbal v. Travelers Ins. Co.,* 151 Fla. 786, 10 So.2d 728 (1942); *Johnson v. Metropolitan Life Insurance Co.,* 52 Ga.App. 759, 184 S.E. 392 (1936). Where the employee has not contributed to the policy, these courts have reasoned that the group insurance coverage was a voluntary and gratuitous gift to the employee which the employer could cancel at will. *E.g. Meyerson v. New Idea Hosiery Co.,* 217 Ala. 153, 115 So. 94 (1927). Where the employee has contributed to the plan, these courts have reasoned that the group policy is nevertheless a contract between the employer and insurer, and therefore notice serves no purpose because the insured could never step into the employer's shoes and continue the policy in effect. *E.g. Johnson v. Metropolitan Life Insurance Co.,* 52 Ga.App. 759, 184 S.E. 392 (1936).

■ In a diversity action, this court is bound to follow the state law in which the court sits. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question therefore becomes whether Illinois follows the majority or minority position. While Illinois law is not entirely clear on the notice issue, it does appear that Illinois precedents adopt the majority position.

Both cases construing Illinois' notice requirements under group insurance plans involved the failure to notify the insured of the termination of coverage. The first decision applying Illinois law arose in the U.S. District Court for the District of Kansas. In *Fagan v. John Hancock Mutual Life Insurance Co.,* 200 F.Supp. 142 (D.Kan.

1961), the original master policy provided insurance coverage, including life insurance, for all employees. The employer and the insured then amended the master policy to terminate the life insurance coverage upon an employee's retirement from full-time work. Illinois law governed the dispute. The Court held:

> *notice must be given the employee of any modification of the contract which affects his rights.* (citations omitted). This is a sound rule. Unless an employee is notified of coverage termination, he cannot take advantage of his conversion rights.

*Id.* at 144. (emphasis supplied). Unfortunately, there existed no Illinois authority to guide the *Fagan* court; the court essentially decided that it was likely Illinois would follow the majority rule.

After *Fagan,* the Illinois Appellate Court for the Second District confronted the notice issue in *Lindgren v. Metropolitan Life Insur. Co.,* 57 Ill.App.2d 315, 206 N.E.2d 734 (2d Dist.1975). In *Lindgren,* the employer cancelled a group policy insurance which had provided life insurance to the contributing employees. No notice of the cancellation was given to the employee, who subsequently died. Despite the cancellation, the employee's estate was able to recover the policy proceeds because no notice of cancellation was given. The court began its analysis by observing that "there appears to be no Illinois cases on this exact point." The court therefore chose to rely on *Fagan* and the ALR's statement of the majority position. The court stated:

> The Annotator states, on page 269:
>
> > "In a majority of cases directly dealing with this question the view has been taken that, without reasonable notice to the employee, the employer may not cancel or modify a master group policy, before liability has attached, so as to deprive the employee or his beneficiary of rights under the policy."
>
> We *agree with the reasoning in the Annotation and in the cases cited above. Where an employee applies for*

*coverage under a group policy, is accepted, and pays the premiums required by the insurer, he has a vested interest in that policy at least to the extent that he cannot be divested without notice.*

The certificate issued by Metropolitan indicates that the employee, Lindgren, had conversion privileges under the policy. He was entitled to a determination of whether any of the conversion privileges were available to him or to the right of seeking adequate protection elsewhere.

206 N.E.2d at 736.

■ Relying principally upon *Lindgren,* this court finds that Illinois law requires notice prior to the cancellation or modification of a group insurance policy. While *Lindgren* admittedly is not an Illinois Supreme Court decision, an appellate level decision is a fair indicator of what a state's supreme court is likely to do. The *Lindgren* holding combined with the fact that the rule announced in *Lindgren* is clearly the majority rule, convinces this court that the Illinois Supreme Court would adopt the *Lindgren* holding.[3]

The defendant attempts to distinguish *Lindgren* and *Fagan* from the present case because they involved termination of coverage; whereas the present case involves a less significant subrogation right. Defendants argue that while requiring notice is a sensible prerequisite to cancellation because it allows for exercise of conversion rights and/or for time to replace the eliminated coverage, notice makes little sense for subrogation rights.

It is true that a stronger argument for notice exists where the policy is cancelled than where a less significant modification is involved. And admittedly it is unlikely

that the addition of a subrogation provision would involve any conversion rights. Still, the distinction defendant draws misses two points.

First, the notice requirement is premised on two grounds. One is the need to preserve the opportunity to exercise conversion rights; but the other recognizes that the insured should not be deprived of a benefit without notice. It is this second policy concern that applies with equal force to both cancellations and modifications. The plaintiff in this case possessed a valuable right to institute suit against the party responsible for his injuries. The right could be worth up to $100,000. The majority rule simply recognizes that before a valuable policy right is eliminated, notice must be given.

Second, the majority cases and the ALR upon which the *Lindgren* court relied explicitly state that the notice rule applies to cancellations *or modifications.* The ALR states, "without reasonable notice to the employee, the employer may not cancel *or modify* a master group policy". Consequently, the language in *Lindgren* itself establishes that the notice requirement applies with equal force to modifications and cancellations.

■ For these reasons, the court holds as a matter of law that the subrogation rider has no binding legal effect upon the plaintiff. Because the notice issue is dispositive, the court need not consider plaintiff's alternative theories of relief.

## B. Costs, Attorney's Fees and Penalties

Illinois law allows the award of costs, fees and statutory penalties where the court finds that an insurer's delay in paying an insured's claim is vexatious and

---

**3.** The court finds that the *Lindgren* holding would apply even though the plaintiff did not contribute directly to the plan. The notice requirement has recently been applied regardless of employee contribution, signalling a move away from the contribution/non-contribution distinction relied upon in some earlier decisions. *Cf. Wilson v. Prudential Ins. Co.,* 144 N.J.Super. 497, 366 A.2d 357 (1976) (notice re-

quired with non-contributory policy). This recent move recognizes that group insurance benefits, whether or not directly contributed to by an employee, is essentially a form of compensation to the employee. In a case such as this, it can be fairly said that the plaintiff indirectly contributed to the plan through his union dues.

unreasonable. *See* Ill.Rev.Stat. ch. 73 ¶ 767 (1981).[4]

■ Whether an insurer's delay has been vexatious or unreasonable is usually a matter vesting in the judgment and discretion of the trial court. *Songer v. State Farm Fire and Casualty Co.*, 91 Ill. App.3d 248, 414 N.E.2d 768, 46 Ill.Dec. 715 (5th Dist.1980). It has been generally recognized, however, that where the insurer defends in good faith, *e.g., Jenkins v. State Sec. Ins. Co.*, 56 Ill.App.3d 737, 371 N.E.2d 1203, 14 Ill.Dec. 150 (1st Dist.1978), or on the basis of a reasonable legal defense which raises an issue of first impression in the jurisdiction, *e.g., Goetze v. Franklin Life Ins. Co.*, 26 Ill.App.3d 104, 324 N.E.2d 437 (2nd Dist.1975), the insurer does not act unreasonably or vexatiously.

■ In the present case, the insurer defended on the basis of a reasonable legal position on an unsettled issue which only one Illinois appellate decision had ever addressed. Even the single precedent was arguably distinguishable from the case at hand. If the insurer had prevailed in establishing its position that it could implement a subrogation provision without notice to the insured, the plaintiff would have been deemed to have breached his obligations and the insurer was justified in withholding benefits until plaintiff signed the subrogation authorization. Under these circumstances, the court finds that the insurer's decision to contest the plaintiff's claim was neither vexatious or unreasonable. Consequently, the request for costs, attorney's fees and penalties based upon § 767 is hereby denied.

**4.** Attorney fees. In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

For the reasons stated herein, the court enters judgment on behalf of the plaintiff and against the defendant. The plaintiff is entitled to the medical and hospitalization benefits provided under the policy without relinquishing his right to maintain, and retain the proceeds from, a third party action.

It is so ordered.

(b) $5,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.