**Herbert E. MARTZ, Plaintiff-Appellee,**

v.

**UNION LABOR LIFE INSURANCE COMPANY, a Maryland corporation, Defendant-Appellant.**

No. 83–2632.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1984.

Decided March 12, 1985.

James B. Davidson, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant-appellant.

David A. Novoselsky, Chicago, Ill., for plaintiff-appellee.

Before WOOD and FLAUM, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

In this declaratory judgment action under 28 U.S.C. § 2201 to determine the parties' respective rights under a group insurance policy issued by defendant Union Labor Life Insurance Company ("the Company") to the Trustees of the Central Laborers Welfare Fund ("the Trustees"), the Company appeals from the district court's grant of summary judgment in favor of plaintiff Martz on his claim that a subrogation amendment to the group policy has no binding legal effect on him. 573 F.Supp. 580. We reverse.

[*] The Honorable Clement F. Haynsworth, Jr., Senior Circuit Judge for the Fourth Circuit, is sitting by designation.

## I.

Plaintiff Martz is a member of the Central Laborers Union, which maintains a welfare fund on behalf of its members. In 1975, the Trustees, who administer the fund, purchased a group insurance policy from the Company. The noncontributory policy covered medical and hospital bills up to a maximum of $100,000 per calendar year. The policy contained the following provision for its termination or modification:

> On any premium due date the Policyholder may terminate this Policy or, subject to the Company's approval, may modify, amend or change the provisions, terms and conditions of this Policy. The Company's written consent shall be required to make any such modification, amendment or change, but the consent of any insured Person or any other Person referred to in this Policy shall not be required to effect such termination or any modification, amendment, or change of this Policy.

In August, 1980, Donald Dippold, Executive Administrator of the welfare fund, contacted Richard Falcone, the Company's Midwest Regional Manager of Claims and Service, for advice on how the costs of the group insurance plan might be reduced. Via a letter to Dippold, dated August 28, 1980, Falcone recommended that the cost of premiums be reduced through adoption of a subrogation provision. Falcone attached an executed copy of the Company's standard subrogation rider, which provided as follows:

> The Company shall be subrogated to the extent of any benefits paid under this Contract, to the proceeds of any settlement or judgment effected against a third party and resulting from the exercise of any rights of recovery which the Person may have against any person or organization. The Person claiming benefits under this Policy shall execute and deliver such instruments and take such

other action as the Company may require to implement this provision. The Person shall do nothing to prejudice the rights given the Company by this provision without its consent. EFFECTIVE DATE OF RIDER: October 28, 1980.

On October 28, 1980, the Trustees met to consider adoption of the subrogation provision. They voted unanimously to amend the policy to include the provision. On November 19, 1980, Martz was injured when the pickup truck he was driving was struck by an Illinois Central Gulf Railroad Company freight train. He sustained severe injuries and was hospitalized. On December 9, 1980, the Trustees formally signed the subrogation rider which had been approved on October 28, 1980. On December 18, 1980, Martz received notice from the Trustees that the insurance policy had been amended to provide for the Company's right to subrogation.

On March 26, 1981, Martz submitted claims to the Company for medical expenses incurred as a result of the accident. The Company paid benefits in the sum of $42,629.19. Martz, whose personal injury suit against the railroad was pending, refused to sign a subrogation agreement authorizing the company to proceed against the railroad. The Company then refused to pay further medical bills.

Martz commenced the present action, seeking a declaratory judgment that he is not legally bound by the subrogation provision. In his amended complaint, Martz raised three arguments in support of his position: (1) the subrogation provision was not adopted in accordance with the procedure set forth in the master policy for amending the policy; (2) the modification, if valid, did not take effect until December 9, 1980, the day on which the Trustees formally signed the rider; and (3) Martz did not receive advance notice of the modification of the policy as required by law.

Martz moved for summary judgment and filed a supporting memorandum. The Company also moved for summary judgment. Martz then filed an "addendum" to his memorandum in support of his motion for summary judgment, attaching letters from the Illinois Department of·Insurance which purportedly established that the subrogation provision had not been approved by the Department for use with accident and health insurance policies and was therefore invalid. The Company moved to strike the addendum on the ground that the letters were inadmissible. The Company further responded (1) that the Department of Insurance had in fact approved the subrogation rider; and (2) that even if the rider had not been approved, it nevertheless was valid as between the parties under section 442 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 1054 (1981). The Company attached an affidavit by Robert Enoex, Jr., Chief Counsel of the Illinois Department of Insurance, in which he stated that no final decision on approval of the rider had been made by the Department. Citing section 442, he further stated that the Department's position was that the approval issue was irrelevant to the question of the contractual rights and liabilities of the parties.

The district court found the absence of notice to Martz dispositive of the issue of liability, and granted summary judgment in his favor. The district court did not rule on the Company's motion to strike.

On appeal, Martz devotes a major portion of his brief to the departmental approval issue, urging this court to affirm the judgment of the district court on this ground. We briefly address this issue before turning to those properly before this court.

## II.

Martz asks this court in effect to grant summary judgment in his favor on the ground that the subrogation rider is invalid for lack of departmental approval, a claim that he failed to raise in his original or amended complaint.[1] He would have us do

---

1. In and of itself, this failure might be deemed fatal. *See Agustin v. Quern,* 611 F.2d 206, 209 (7th Cir.1979) (issue not raised by plaintiff in

so on the basis of an "addendum" that was unsupported by any evidence meeting the requirements of Rule 56 of the Federal Rules of Civil Procedure.

■ It bears repeating that the purpose of summary judgment is to determine whether there is any genuine issue of material fact in dispute and, if not, to render judgment in accordance with the law as applied to the established facts. The facts must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence. 6 Moore's Federal Practice ¶ 56.-11[1.–8] (2d ed. 1983). The correspondence Martz filed with the district court was not supported by affidavit or otherwise authenticated. In the form in which it was presented, it constituted inadmissible hearsay. The district court could not properly have relied upon the exhibits as submitted and neither may we.

### III.

On appeal, Martz does not pursue his claim that the modification of the policy was not effected in accordance with the procedures set forth in the master policy. He does contend, though not strenuously, that the subrogation amendment did not take effect until December 9, 1980, the day on which the Trustees formally signed the rider.[2] We disagree.

The affidavits of Richard Falcone and Donald Dippold establish that the Company and the Trustees intended the subrogation rider to be effective as of October 28, 1980. The executed copy of the rider and accompanying letter of August 28, 1980, deliv-

ered by the Company to the Trustees, clearly constituted the Company's consent to the modification of the policy. The Trustees understood this to be the case. The terms of the rider provided that it would be effective as of October 28, 1980. At a meeting on October 28, 1980, the Trustees voted unanimously to amend the policy to implement the subrogation provision as of October 28, 1980. A letter dated November 12, 1980 from Dippold to Falcone formally confirmed the Trustees' decision. The Trustees considered the December 9, 1980 signing of the rider to be a mere formality.[3]

■ Martz cites no contractual, statutory, or case authority for the proposition that an amendment to an insurance policy is ineffective until formally signed despite the contracting parties' clear intent to the contrary. The general rule appears to be that the effective date of a policy modification will be determined by the terms of the modification or the letter accompanying it. See 13A Appleman, Insurance Law and Practice, ch. 276 § 7605 (1976). The terms of the subrogation rider provided, and the parties intended, that it would be effective as of October 28, 1980. We see no valid legal basis for concluding that the subrogation rider did not become effective until December 9, 1980. This therefore is not a case in which the insurer amended the master policy after liability under that policy had attached.

### IV.

We turn to the issue of notice. It is undisputed that Martz did not receive notice of the subrogation amendment until December 18, 1980, approximately two months after its adoption. The district court held that advance notice to the in-

the pleadings cannot form basis for challenging summary judgment in defendant's favor).

2. Specifically, Martz contends that the Company "retroactively amended" the policy.

3. The procedure followed by the Company and the Trustees in amending the policy was in accord with prior practice. Although the Com-

pany signed the original master policy on October 14, 1975, the Trustees did not sign their written application until November 25, 1975. The parties agreed, however, that coverage would begin on October 1, 1975. The Company provided insurance under the policy to eligible fund members as of October 1, 1975, approximately two months before the Trustees formally executed the application.

sured of a cancellation or modification of benefits is required by Illinois law, but did not determine who owes the insured this duty. The district court further held that because Martz did not receive such notice, he is not legally bound by the subrogation rider. Martz was declared entitled to all benefits provided under the policy without relinquishing his right to maintain, and retain the proceeds of, his action against the railroad.

In holding that Illinois law requires notice to individual insureds prior to the cancellation or modification of a group insurance policy, the district court relied upon *Lindgren v. Metropolitan Life Insurance Co.*, 57 Ill.App.2d 315, 206 N.E.2d 734 (2d Dist.1965). *Lindgren*, the only Illinois case addressing the issue of notice, involved the termination of a contributory group insurance master policy without advance notice to the individuals insured under it. The court ruled the termination was ineffective as to the decedent and his beneficiary because the decedent was not provided with reasonable notice of the termination.

The *Lindgren* court relied heavily upon *Fagan v. John Hancock Mutual Insurance Co.*, 200 F.Supp. 142 (D.Kan.1961), a diversity case in which the district court was bound to apply Illinois law to the notice issue before it. In *Fagan*, the master policy, which provided life insurance for employees as long as they worked full-time, was amended to provide that coverage would terminate when an employee reached normal retirement age, whether he in fact retired. No notice of the amendment was given to the insured, who continued to work after normal retirement age until his death. His beneficiaries claimed the amendment therefore was ineffective. Illinois law being nonexistent, the *Fagan* court applied the majority rule:

> The weight of authority is that notice must be given the employee of any modification of the contract which affects his rights.... This is a sound rule. Unless an employee is notified of coverage ter-

mination, he cannot take advantage of his conversion rights.

*Id.* at 144 (citations omitted).

The *Lindgren* court found persuasive the reasoning in *Fagan* and the cases cited in 68 A.L.R.2d 249, entitled "Cancellation or Modification of Master Policy as Termination of Coverage under Group Policy."

> Where an employee applies for coverage under a group policy, is accepted, and pays the premiums required by the insurer, he has a vested interest in that policy at least to the extent that he cannot be divested without notice. The certificate issued by Metropolitan indicates that the employee, Lindgren, had conversion privileges under the policy. He was entitled to a determination of whether any of the conversion privileges were available to him or to the right of seeking adequate protection elsewhere.

*Lindgren*, 57 Ill.App.2d at 319, 206 N.E.2d 734.

In the case at bar, the district court rejected the Company's attempt to distinguish *Lindgren*. The Company argued that this case involves neither termination of benefits, conversion rights, nor the need to seek adequate protection elsewhere. The Company further pointed out that the policy under which Martz is insured is non-contributory. The district court found that the notice rule applies to modifications as well as terminations of benefits and that depriving Martz without notice of his valuable right to institute suit against the party responsible for his injuries undermined one consideration underlying the notice rule— that an insured should not be deprived of a benefit without notice. Finally, the district court noted that the notice rule recently has been applied to noncontributory policies, a move that recognizes that group insurance benefits are a form of employee compensation. The Company asks us to limit *Lindgren's* notice requirement to the *termination* of *contributory* master policies.

We have canvassed the cases cited in the annotation relied upon by the *Lindgren* court, and in its updated version. Some,

like *Lindgren,* involved cancellation of the entire master policy. *See, e.g., Cantrell v. Benefit Ass'n of Railway Employees,* 136 Mont. 427, 348 P.2d 345 (1959). Others involved termination of particular benefits. *See, e.g., Parks v. Prudential Ins. Co. of America,* 103 F.Supp. 493 (D.Tenn.1951) (disability benefits); *Poch v. Equitable Life Assur. Soc.,* 343 Pa. 119, 22 A.2d 590 (1941) (disability benefits). Still others involved modifications that limited the insurer's liability. *See, e.g., Fassio v. Montana Physicians' Service,* 170 Mont. 320, 553 P.2d 998 (1976) (modification excluded medical coverage for experimental treatment). The cases that are most analogous to the present case are those in which master policies that provided for payment of disability benefits at certain rates were modified to provide that those payments would be reduced by any amount the insured received from workmen's compensation or social security. *Harrison v. Insurance Co. of North America,* 294 Ala. 387, 318 So.2d 253 (1975); *Ogden v. Continental Casualty Co.,* 208 Kan. 806, 494 P.2d 1169 (1972); *Greer v. Continental Casualty Co.,* 347 So.2d 70 (La.App.1977). To the extent that the insureds in these cases were entitled to receive, prior to the modifications, full compensation from their insurance companies and compensation from outside sources, the cases are indistinguishable from the present case. These modifications, like the subrogation provision at issue here, reduced the amount of compensation the insureds would receive from all sources and concomitantly reduced the amount the insurance companies ultimately would have to expend to satisfy their obligations to the insureds. In either case, the modification effects a deprivation of something of value to the insured.

The Company argues that Martz would have had no need to seek "adequate protection elsewhere" because none of his coverage under the master policy was eliminated. True, Martz's right to indemnity under the policy was not affected. But prior to the modification, Martz had under the master policy, if by implication only, a right to sue a tortfeasor for the same expenses covered by the policy. Although it is unlikely that Martz would have terminated his participation in this noncontributory plan and sought comparable coverage under an individual insurance policy with no subrogation provision, advance notice of the modification would have given him the opportunity to exercise this option.

There is also the question whether notice is required for modifications of noncontributory group policies. The contributory-noncontributory distinction has been raised in many of the cases addressing the notice issue. Some courts have expressed their willingness to impose and enforce a notice requirement because the premiums or a portion thereof are paid by the employee. But even in the older cases there is dicta to the effect that the same rule applies in cases involving noncontributory policies. *See, e.g., Thompson v. Pacific Mills,* 141 S.C. 303, 139 S.E. 619 (1927). Courts that have refused to impose a notice requirement on the modification or termination of noncontributory group policies have reasoned that the insurance coverage was gratuitous. *See, e.g., Meyerson v. New Idea Hosiery Co.,* 217 Ala. 153, 115 So. 94 (1927).

It is doubtful that this distinction would be decisive in a case like the one before us. The welfare fund at issue here is supported in one of two ways or by a combination of both. Either the fund is supported solely by union dues, an unlikely supposition, or the employer contributes to the fund, an obligation incurred through the collective bargaining process. If the fund is supported solely by union dues, the insured employee clearly contributes, albeit indirectly, to the maintenance of the group policy. If the employer contributes, the insurance is clearly a form of employee compensation. In either case, the employee has that "vested interest" in the group policy of which the *Lindgren* court spoke. *Lindgren,* 57 Ill.App.2d at 319, 206 N.E.2d 734.

The imposition of a notice requirement under the facts of this case appears to be a reasoned extension of *Lindgren,* but this is

a determination best left to the Illinois Supreme Court. We assume, for the purpose of deciding this appeal, that Illinois law requires such notice. The decisive issue is whether the insurer, the only defendant in this case, owes the insured this duty. There appears to be little agreement among the courts on this issue. We turn first to *Lindgren.*

Lindgren's beneficiary's lawsuit consisted of two counts: one against the insurer on the policy; and the second against the employer for negligence in administering the policy. As we previously noted, the appellate court reversed the trial court's judgment in favor of defendants, holding that the termination of the master policy was ineffective as to the decedent and his beneficiary because the former was not provided with reasonable notice thereof. The employer filed a petition for rehearing; having interpreted the *Lindgren* opinion to hold that the insurer was primarily liable for the failure to give notice, the employer asked the court to dismiss the count against it. The court denied the petition, stating that it was unable to determine from the record whether the insurer or the employer was responsible for giving the notice to which the insured was entitled. Apparently, this issue was to be resolved by the trial court on remand. *Lindgren* then provides no definitive answer.[4]

Several courts have imposed the duty to give notice upon the insurer. *Harrison,* 294 Ala. 387, 318 So.2d 253; *Ogden,* 208 Kan. 806, 494 P.2d 1169; *Smith v. Washington National Ins. Co.,* 117 S.W.2d 476 (Tex.Civ.App.1938). The respective rationales for these decisions were that (1) state law provided that the group policyholder was the agent of the insurer for the purpose of notice; (2) the insured had paid the premiums directly to the insurer; and (3) the policy at issue expressly required the

insurer to give notice to group members. None of these rationales has any force in this case.

■ We are persuaded that, in the absence of a contrary contractual provision, the duty to give notice does not rest with the insurer. Under Illinois law, group policyholders procure and administer group policies as agents of the insureds. *Albrecht v. North American Life Assur. Co.,* 27 Ill.App.3d 839, 327 N.E.2d 317 (2d Dist. 1975). The insurer's direct relationship is with the policyholder, not the individual insureds. It is the policyholder, here the insured's union, with whom the insurer deals.

■ Thus, under section 367(2)(b) of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 979(2)(b), the insurer must issue to the policyholder, for delivery to the insured employee, an individual certificate setting forth the insurance protection to which the employee is entitled. State law, then, places the ultimate responsibility for ensuring that insureds are informed of their coverage on the policyholder.[5]

An identical provision under Louisiana insurance law has led Louisiana state courts to conclude that the policyholder has the duty to give notice to the insureds of the termination or modification of benefits under the policy. *Humana, Inc. v. King,* 359 So.2d 237 (La.App.1978); *Greer,* 347 So.2d 70. In *Greer,* the employee was not notified of the cancellation of a contributory master policy and the substitution of a noncontributory master policy which reduced disability benefits by allowing the deduction of social security benefits received by the disabled employee and those received by his family members because of his disability. The court held that Louisiana law, which places on the policyholder the ultimate responsibility for informing

4. In a number of older cases, the courts held that a *termination or modification of a master policy* was not legally binding upon an insured who did not receive notice without discussing whether the duty to give notice was owed the insured by the insurer or the policyholder. Addressing this issue is necessary because, under

recent Illinois cases, the insured's remedy will differ depending upon who owes the duty. *See infra* p. 142.

5. In this case, the union policyholder, in apparent recognition of this duty, undertook to give notice, albeit *after* modification of the policy.

the insured of his coverage under the policy by delivering the certificate of insurance, obligates the policyholder to inform the insured of any subsequent termination or modification of benefits. *Id.* at 72.

This position is practical, logistically as well as economically. Employers and unions maintain employee and membership lists and insurance plan participation lists in the ordinary course of business. They are best able to keep track of the flow of individuals in and out of employment, membership and plan participation. They inexpensively and routinely can and do give notice to group members via newsletters or with paychecks. It makes little sense to require group insurers to maintain and update, through information they can receive only through the policyholder, their own sets of employment and membership records. The cost of maintaining such records and the cost of printing and mailing notices would be passed on to the insured.

We hold that the Company was under no obligation to provide Martz with advance notice of the modification of the master policy. Although this notice duty appears to lie with the Trustees, it clearly does not lie with the Company in this case. Martz contends that he cannot be bound by the subrogation rider even if the Company owed him no duty. We disagree. Martz's claim, if any, is one against the Trustees for negligence in the administration of the welfare fund, and his attendant remedy is damages. Because the company owed Martz no duty to provide advance notice, it cannot be estopped from enforcing the subrogation provision. *Albrecht*, 27 Ill.App.3d at 842–43, 327 N.E.2d 317.

REVERSED.